## HORNSTEIN *v.* HORNSTEIN

[No. 128, October Term, 1949.]

*Decided July 18, 1950.*

630

632

634

The cause was argued before MARBURY, C. J., DELA-PLAINE, COLLINS, GRASON, HENDERSON and MARKELL, JJ.

*Joseph B. Simpson, Jr.,* with whom were *Vivian V. Simpson, Simpson and Simpson* and *P. Batemen Ennis* on the brief, for appellant.

*Anne S. Musgrave* for appellee.

MARKELL, J., delivered the opinion of the Court.

This is an appeal from a decree granting plaintiff a divorce *a mensa* on the ground of desertion and in effect refusing defendant a divorce on that ground on his cross-bill. There is also a second appeal from a later decree modifying the original decree with respect to alimony. The case was tried in open court before Judge Digges, who filed a full and careful opinion, holding that plaintiff was originally guilty of desertion but that afterwards she made a bona-fide offer of reconciliation, which defendant rejected and that thereby defendant became guilty of desertion.

This marriage was handicapped from the beginning by differences in nationality and language, by a nervous or emotional temperament on the part of the wife and by quarrelsome dispositions on the part of both. Plaintiff is a citizen of Italy, defendant an American. Subjects of argument between them ranged from the question whether the husband cared more for the dog than he did for his wife's little sister to the proper pronunciation of "Adeste, fideles", found on a Christmas card. The latter question may perhaps have involved long-standing differences between English, Continental and American pronunciation of Latin words. Whatever it involved, it approaches the ultimate in triviality as a subject of con-

troversy between husband and wife. A common interest in Shakespeare was insufficient to bridge the gulf between them, but only furnished an occasion—or a pretext—for separation.

This is peculiarly a case in which due weight should be given to the findings of the judge who saw and heard the witnesses and observed their demeanor in connection with their sometimes conflicting testimony. Defendant in his brief says, "We believe that the law was thoroughly understood and well stated by the learned chancellor below, but we most respectfully submit that the chancellor erred in applying that law to the facts and must have misconstrued or misunderstood the witnesses when testifying. The verbosity of the witnesses might well have caused the learned chancellor to reach this erroneous conclusion." We agree with defendant that the opinion below accurately states the law (at least from defendant's point of view) and applies it to the facts as the court understood them. If, however, the court misconstrued or misunderstood the witnesses when testifying, it is our duty to say so and to correct any such error. The scope of our review should practically be limited to the question whether the court did misconstrue or misunderstand the witnesses.

In the circumstances, it seems unnecessary to repeat or summarize the statement of facts. We shall request the Reporter to set out Judge Digges' opinion in the statement of the case.

If we were to review the case *de novo*, regardless of the decision and the opinion below, we might hesitate to find that plaintiff was originally guilty of desertion. It is true her testimony that her husband threatened to treat her as Othello treated Desdemona is uncorroborated, but the husband's denial is also uncorroborated. Even if he never intended to carry out such a threat, he may have made it in the hope that she would take it seriously enough to give him plausible ground for charging desertion. His subsequent conduct is not inconsistent with this possibility. Moreover, it is questionable whether

her conduct in any aspect amounted to desertion. She left the common home for a few days or weeks and then returned voluntarily. When she returned, he had left, he says on a visit. When he learned that she had returned he did not return and never has done so. It seems questionable whether her conduct shows an intention to terminate the marriage relation. *Flohr v. Flohr*, 195 Md. 482, 73 A. 2d 874. Giving him back her engagement ring was an unusual act, but seems rather an act of petulance than of deliberation.

However, we shall assume, as Judge Digges found, that plaintiff originally deserted her husband. On this assumption we think that on the facts stated in Judge Digges' opinion there is no escape from his conclusion that plaintiff made a *bona fide* offer of reconciliation, which defendant rejected, and that defendant thereby became guilty of desertion. This conclusion would seem no less clear if there were omitted from the opinion the statement, in part of one sentence, which defendant says is unsupported by evidence, viz., that defendant "refused to do so [resume marital relations] while testifying from the witness stand even though Mrs. Hornstein again renewed her offer while testifying as a witness in this case." This statement is practically the only basis for defendant's contention that the judge "misconstrued or misunderstood the witnesses". We do not think it supports defendant's contention.

We do not find in the printed testimony any statement *in totidem verbis* that the husband *again* refused from the witness stand to resume marital relations or that the wife *renewed* her offer while testifying as a witness. The husband's testimony (fully confirming the wife's testimony) as to his refusal of her offer amounted to an emphatic affirmance of his determination not to be reconciled. This testimony, together with his demeanor, may well have been taken as a new refusal by him. The wife testified, "Q. Would you be willing for your husband to come back and live with you? A. No.

"Q. Why? A. Simply because I think he doesn't love me." (This sentence was followed by a somewhat rambling statement elaborating it.) This testimony, together with her demeanor, may well have been taken as indicating that she *would* renew her offer if he would in good faith resume marital relations on the normal terms of mutual affection. She was then convinced that he would not do so.

On the question of good faith in offers of reconciliation, we think offers and refusals from the witness stand deserves a minimum of weight. In such testimony too often the theatrical element is at a maximum, sincerity at a minimum. *Kirkwood v. Kirkwood,* 165 Md. 547, 170 A. 180.

Plaintiff went direct to defendant to make her offer of reconciliation. He refused and suggested "that we work through counsel". This court has more than once suggested that in marital differences direct personal communication, and not communications through counsel or other intermediaries or by mail or telephone, is a badge of good faith. *Hokemeyer v. Hokemeyer,* 194 Md. 223, 227, 71 A. 2d 15, 17, and cases cited. Defendant professed doubt or disbelief that a reconciliation "would work out". His conduct as a whole suggests that he may have feared that it might work out, at least to the extent of depriving him of a possible ground for charging her with desertion.

The original decree, dated September 9, 1949, required defendant to "pay the sums due on the mortgage, taxes and insurance on the house jointly owned by the parties * * *." Later, the home having been sold under foreclosure, a decree of December 13, 1949 increased the amount of alimony and eliminated the provision for payment of expenses on the house. Whether these provisions of the original decree were lawful is not before us, as they have been eliminated by the later decree. Pendency of this appeal did not deprive the lower court of power to modify the alimony. *Rohrback v. Rohrback,* 75 Md. 317, 23 A. 610. There is nothing in the printed

record from which we could determine whether alimony under the later decree is more than an equivalent of the provisions of the earlier decree or is excessive. It has not been argued that it is excessive.

*Decrees affirmed, with costs.*