## PET *v.* PET

[No. 267, September Term, 1964.]

*Decided April 30, 1965.*

The cause was argued before PRESCOTT, C. J., and HORNEY, MARBURY, SYBERT and BARNES, JJ.

*Robert S. Rody* for appellant.

*Richard C. Murray* for appellee.

HORNEY, J., delivered the opinion of the Court.

On this appeal by the wife (Ferne H. Pet) from a portion of the decree granting her a divorce *a mensa et thoro* from the husband (Paul M. Pet) on the ground of abandonment or desertion, it is contended that the chancellor neglected to give due consideration to the overall financial well being of the husband in determining the award of alimony and support for the minor children and the allowance of counsel fees.

The principal source of income of the husband was the salary he received from a corporation, known as the Paul Pet Construction Company, which had been organized soon after the marriage of the parties for the purpose of engaging in the development and construction of home sites. Aside from his salary, which had steadily increased over the years until it reached $250 per week, the husband also received from the corporation incidental weekly benefits having a worth of about $50. Although the husband was the only stockholder, the control of the construction company was vested in his grandfather (Jacob Petrushansky) who was its president. And the grandfather, to whom the corporation was indebted in the amount of approximately $800,000, held all of the stock as collateral for the loans made to the corporation by him and by companies he controlled. The grandfather, who also determined the amount of the weekly compensation payable to his grandson and who had the sole authority to sign company checks, reduced the salary of his grandson to $150 per week several months before the trial of this case. For several years prior to the separation of the parties, the husband had another source of income from the earnings of a sole proprietorship known as the Mercury Building Company.

The wife, who was not employed other than as a housewife, was well provided for by the husband and lived comfortably in a home they owned as tenants by the entireties. The home

had a value of over $30,000, but there was an outstanding mortgage against it of $9,000 to $10,000. The wife continued to occupy the home with the children after the separation and made use of an automobile purchased by the husband. Through her attorney, the wife itemized the weekly amounts she considered necessary to maintain her standard of living and to support the children, the total of which was $131. Alimony *pendente lite* in the amount of $135 had been allowed by the chancellor.

The grandfather testified that he reduced the salary his grandson received from the construction company from $250 to $150 per week because the company had ceased constructing homes, apparently due to the unavailability of building lots. He further testified that he had stopped building because he was "too old"—he was then eighty-six — and that his grandson, if he wanted to, could continue building "on his own." While considerable testimony was offered to prove the net worth of the construction company, the real value of the company was in dispute. Although the corporation had assets of over one and three-quarter million dollars, most of which were in the form of land installment contracts, there is some question as to the actual amount of its liabilities. There was also a difference of opinion between the accountants of the respective parties as to the future profits to be realized from collections on the land installment contracts and as to the proper characterization and treatment of the debts and interest thereon due the grandfather. Other evidence revealed the amount of the earnings received by the husband before taxes from the Mercury Building Company for several years prior to the time of trial. While the earnings of this solely owned business varied from year to year with the high point of $7600 having been reached in 1962, the husband testified that the operation of this company had almost ceased. There was no testimony as to the prospect of future earnings.

The chancellor, in finding that the wife was entitled to a partial divorce, based the award of $145 per week for alimony and support primarily on the undisputed weekly salary and incidental benefits received by the husband from the construction company as of the time of trial. The wife contends, however, that the chancellor should have based the award of alimony and

496

support on the sum of $400 [1] she estimated the husband was earning at the time of separation. A further claim is made that an additional sum based on the projected profits of the Pet Construction Company should have been included in the award. And it further contended that the allowance of $1000 for counsel fees was grossly inadequate.

Based on the facts of this case as shown by the record, we cannot say that the chancellor was clearly in error in awarding the wife $75 per week as alimony and $70 per week as support for the children. The award of alimony and support was within the sound discretion of the chancellor and his determination will not be set aside or modified unless the award was clearly wrong. And inasmuch as the factors controlling an award of alimony are the needs of the wife and the financial ability of the husband to pay, the amount of the award must necessarily depend on the circumstances in each case. *Mays v. Mays,* 232 Md. 122, 192 A. 2d 80 (1963) ; *Gosnell v. Gosnell,* 208 Md. 179, 117 A. 2d 861 (1955). The wife made no claim that the award of $145 per week was insufficient to provide for her and the children. Instead she indicated that her weekly needs and those of the children were less than the amount awarded.

On appeal, however, the wife contends that her husband deliberately lessened his earning capacity and debased his financial worth, and would have us consider the financial ability of the husband to pay alimony as of the time of separation rather than as of the time of trial. This, however, overlooks the evidence that sound business judgment necessitated the reduction in salary, that the value of the interest of the husband in the Pet Construction Company was in dispute, and that there is no indication of future earnings from Mercury Building Company since that operation has almost ceased. Similar claims were made and denied in *Newmeyer v. Newmeyer,* 216 Md. 431, 140 A. 2d 892 (1958) and in *Kapneck v. Kapneck,* 235 Md. 366, 201

---

1. The sum of $400 was arrived at by using the former weekly salary of $250 and the weekly incidental benefits of $50 and by prorating the 1962 earnings of the solely owned Mercury Building Company on a weekly basis.

A. 2d 798 (1964). For the same reasons given in those cases, we must deny an increase in the award in this case since the record does not support the claim that the chancellor erred in determining the amount he allowed for alimony and support of the children. The rule of this Court, when the point under discussion is in issue, is that an award of alimony is to be based on the earning capacity and financial worth of the husband at the time of trial. *Kapneck v. Kapneck, supra; Newmeyer v. Newmeyer, supra; Lewis v. Lewis,* 219 Md. 313, 149 A. 2d 403 (1959). But this does not mean when it is shown that a husband, living in affluent circumstances due in part to the financial assistance or aid of a relative or other person, has had such backing withdrawn or curtailed as a result of a marital rift which threatens to charge him with larger alimony payments than might otherwise be the case, that a chancellor may not consider the earning ability and financial worth of the husband as of the time of separation. On the contrary, in a situation such as that, we know of no reason why evidence thus adduced should not be considered along with all other relevant facts and circumstances in determining the amount of alimony to be allowed.

Although we hold in this case that the award of alimony was properly based on the overall financial ability of the husband at the time of trial, there is, of course, no reason why the award may not be increased or decreased from time to time when and as there are changes in the circumstances of the parties. Nor is there any reason why either party should not resort to discovery for such purposes.

We are also of the opinion that the allowance of $1000 as a counsel fee was not inadequate under the circumstances of this case.

> *Decree affirmed; the appellee to pay the costs.*