THOMAS A. GARLAND *v.* MARY R. GARLAND

[No. 736, September Term, 1973.]

*Decided July 15, 1974.*

The cause was argued before MORTON, THOMPSON and LOWE, JJ.

*Thomas A. Garland,* with whom were *William T. Glasgow* and *Healy & Garland* on the brief, for appellant.

*James G. Beach, Jr.,* and *Eugene L. Miles, III,* with whom were *Buckmaster, White, Mindel & Clarke* on the brief, for appellee.

THOMPSON, J., delivered the opinion of the Court.

On November 8, 1973, Thomas A. Garland, appellant, was found to be in contempt of a decree of divorce by the Circuit Court for Baltimore County, dated May 16, 1973. At the time of the contempt adjudication, the divorce decree was also modified. Mr. Garland appeals.

The decree of May 16: awarded to Mrs. Garland a divorce *a vinculo matrimonii;* ordered the appellant to pay $30 per week, per child, for each of the four children then in the custody of the wife, to pay $75.00 per week alimony, and to pay $1,250 towards his wife's counsel's fees; and directed that the proceeds of a joint savings and loan account, totaling $9,037.95 plus interest from September 30, 1971, be divided equally between the parties. An appeal to this Court from this decree was timely entered.

While appeal from the divorce decree was pending, the proceedings involved in the instant appeal took place. On June 18, 1973, a petition for contempt and modification of the divorce decree was filed by Mrs. Garland. Appellant, on July 3, 1973, responded with a demurrer and answer. Pursuant to a hearing on the petition, Judge John Grason

Turnbull, on November 8, 1973, overruled the demurrer, found the appellant to be in contempt for violating the divorce decree, and modified that decree to reflect changes in circumstances over the preceding 6 months.

## I Jurisdiction

The original papers were transmitted to this Court on appeal from the divorce decree under Md. Rule 1026 b. Appellant questions the jurisdiction of the trial court to proceed with the hearing on the petition at a time when the court below neither retained the original papers from the divorce proceeding, under Md. Rule 1026 f nor obtained certified copies thereof under § 10-204 of The Courts Article. Mr. Garland duly objected to proceeding without benefit of the original papers.

The record discloses that counsel was properly served with a copy of the petition on June 22, 1973, and that both counsel and the trial judge had copies of all of the pertinent papers before them during the November 5th hearing. After this had been established by the trial judge, he overruled the objection and proceeded with the hearing. Our research has not disclosed a case in which the precise question has been presented. There are analogous cases, however, holding that a court can take judicial notice of its own orders, a violation of which was the basis for contempt proceedings, and that therefore formal proof of that order was not required. In *Schwartz v. United States*, 217 F. 866, 870 (4th Cir. 1914) the Court said:

> "There is authority for the proposition that the criminal contempt is so far distinct from the original civil proceedings that the order of injunction must be formally introduced. State v. Hudson County Electric Co., 61 N.J. Law, 114, 38 Atl. 818. But we think this rule too technical. The better view is that, as one proceeding grows out of the other and is collateral to it, the court will take judicial notice in the trial of the latter of all orders made in the former. State v. Jones, 20 Wash. 576, 56 Pac. 369; State v. Thomas, 74 Kan. 360, 86 Pac. 499;

State v. Porter, 76 Kan. 411, 91 Pac. 1073, 13 L. R. A. (N.S.) 462; Haaren v. Mould, 144 Iowa 296, 122 N. W. 921, 24 L. R. A. (N.S.) 404."

*See also Bailey v. Superior Court,* 142 Cal. Dist. Ct. App. 47, 297 P. 2d 795, 800, (3d Dist. 1956); *Young v. Commonwealth,* 194 Va. 780, 75 S.E.2d 479, 481 (1953); *Mattos v. Superior Court,* 30 Cal. App. 2d 641, 86 P. 2d 1056, 1059 (1939); *Haaren v. Mould,* 144 Iowa 296, 122 N. W. 921, 923 (1909); *Ex parte Ah Men,* 77 Cal. 198, 19 P. 380, 381 (1888).

9 J. Wigmore, *Evidence* § 2579 (3d ed. 1940) states the rule as follows:

"However, for reasons of convenience, where controversy is unlikely and the expense of a copy would be disproportionate, Courts are often found taking notice of the tenor or effect of some part of a judicial proceeding, without requiring formal evidence. Since this dispensation is not obligatory on the part of the Court, and since it must depend more or less on the practical notoriety and certainty of the fact under the circumstances of each case, little uniformity can be seen in the instances. It is often done for a part of the record in the *same proceeding,* or in a *prior stage of the same controversy;* less often for the record of a *distinct litigation,* especially when in another Court."

Charles T. McCormick in an exhaustive analysis of this area regarded it to be settled that courts, trial and appellate, may take judicial notice of ". . . their own respective records in the present litigation, both as to matters occurring in the immediate trial, and in previous trials or hearings." C. McCormick, *Judicial Notice,* 5 Vand. L. Rev. 296, 311 (1952).

These authorities seem not to be at variance with general statements from the Court of Appeals of Maryland, *LeBrun v. Marcey,* 199 Md. 223, 228, 86 A. 2d 512 (1952):

"We may, however, repeat that this court takes judicial notice of its own records. *Fletcher v.*

*Flournoy*, 198 Md. 53, 81 A. 2d 232. The lower court, therefore, may and should take judicial notice of the record in this court of a case in that court."

In *Fletcher v. Flournoy*, 198 Md. 53, 60-61, 81 A. 2d 232 (1951), *cert. denied*, 343 U. S. 917, 72 S. Ct. 649, 96 L. Ed. 1331, the Court said:

". . . the United States Court of Appeals for the Fourth Circuit quoted and followed a statement in its opinion by Judge Soper in *Morse v. Lewis*, 4 Cir., 54 F.2d 1027, 1029, 'The general rule undoubtedly is that a court will not travel outside the record of the case before it in order to take notice of the proceedings in another case, even between the same parties, and in the same court, unless the proceedings are put in evidence; and the rule is sometimes enforced with considerable strictness.* * * But in exceptional cases, as high authority shows, the dictates of logic will yield to the demands of justice, and the courts in order to reach a just result, will make use of established and uncontroverted facts not formally of record in the pending litigation.' In the instant case, the demands of justice do not suggest an exception to settled rules. Rule 2 itself provides a simple and inexpensive way to present such records in the form of 'sworn, or certified or photostatic copies' attached to or filed with an affidavit. This court, like the Supreme Court (*DeBearn v. Safe Deposit and Trust Company*, 233 U.S. 24, 32, 34 S.Ct. 584, 58 L.Ed. 833) takes judicial notice of its own records, in the instant case as in other cases. *Christopher v. Sisk*, 133 Md. 48, 50, 104 A. 355; *Snodgrass v. Stubbs*, 192 Md. 287, 292, 64 A. 2d 130, 133. As to trial courts, the general rule stated by Judge Soper is law in Maryland."

See also *Matthews v. Matthews*, 112 Md. 582, 589, 77 A. 249 (1910). In view of the authorities cited above and their sound reasoning, we hold that, though not the favored

practice, it was not error for the trial judge to proceed in the instant case with the hearing based upon copies which satisfied him as to their authenticity, albeit without formal proof thereof, and in the absence of any contention that the copies before the court were inaccurate.

It is not contended that the lower court lacked jurisdiction because the appeal from the divorce decree was pending; however, we will briefly discuss this question. Finding changed circumstances, Judge Turnbull modified the divorce decree by altering the amount of the support payments for the children. The cases have held that the trial court can modify the alimony payment provisions of a divorce decree with respect to matters which arise after the passage of the decree and while an appeal therefrom is pending. *Hornstein v. Hornstein,* 195 Md. 627, 638, 75 A. 2d 103 (1950); *Berman v. Berman,* 191 Md. 699, 706, 62 A. 2d 787 (1948); *Rohrback v. Rohrback,* 75 Md. 317, 319, 23 A. 610 (1892); Annot., 19 A.L.R.2d at 717. It would seem by analogy that the trial court would have the power, pending an appeal, to modify the support payment provisions of a divorce decree in the event of changed circumstances which arise subsequent to the original decree. *See Lewis v. Lewis,* 219 Md. 313, 316, 149 A. 2d 403 (1959); *Chappell v. Chappell,* 86 Md. 532, 541-42, 39 A. 984 (1898), *cert. denied,* 165 U. S. 720, 17 S. Ct. 992, 41 L. Ed. 1185; Annot., 163 A.L.R. 1319 (1946).

It is apparent that the adjudication for contempt was in support of the divorce decree, and operating as an enforcement of the prior decree; thus there is no jurisdictional infirmity. *See* Md. Rule 685 a; § 1-202 (a) of The Courts Article. *See generally State v. Roll & Scholl,* 267 Md. 714, 728, 298 A. 2d 867 (1973); *Gatuso v. Gatuso,* 16 Md. App. 632, 636, 299 A. 2d 113 (1973); Annot., 19 A.L.R.2d at 709.

### II Contempt

Mrs. Garland's "Petition for Contempt Citation and Modification of Decree" alleged that Mr. Garland was in contempt because he failed to make two alimony and support payments, in accordance with the terms of the

divorce decree of May 16, 1973, and for his interference with the right of the wife to collect her one-half of the joint savings & loan account awarded to her by that decree. The trial judge found appellant in contempt on both grounds. Mr. Garland alleges that he was denied due process because the court considered his failure to make payments subsequent to the date the petition was filed. He contends specifically that he was denied due process because he had no notice that the court would consider, in the proceedings, his failure to make payments after the petition was filed. We think the contention is without merit, even though we have not found direct authority on the question.

Although, as we pointed out in *Gatuso v. Gatuso, supra,* at 637, the authority of the equity court to act is limited by the issues framed by the pleadings, this does not mean that an equity court should not consider delinquencies in making required payments after the date the petition was filed provided, of course, there was a default at the time the petition was filed and adequate notice and opportunity to be heard was provided. In that case, there was a petition for contempt filed but no petition to modify the original decree. We reversed the modification of the decree, because there was a denial of due process of law in not giving the other party notice of the intention to seek modification of the decree. See also *Madaio v. Madaio,* 256 Md. 80, 84, 259 A. 2d 524 (1969), where there was no notice that a modification of the decree would be sought. In the instant case, there was notice that Mr. Garland was alleged to be in contempt for failure to make payments required by the decree, and thus there was adequate notice as to the nature of the contempt proceedings. We will discuss the modification hereinafter.

In considering a question of mootness, the Court of Appeals in *Poole v. Miller,* 211 Md. 448, 456, 128 A. 2d 607 1957), cited with approval the following:

"... As is said in 19 *Am. Jur. Equity,* Sec. 411, 'While equitable jurisdiction is to be determined with reference to the situation existing at the time when the bill is filed, the relief to be accorded by the decree is governed by the conditions which are

87

shown to exist at the time of making thereof, and not by the circumstances attending the inception of the litigation.' " (Other authorities omitted.)

In the instant case it is conceded there was a default in payments of $85 at the time the petition for contempt was filed. We think it was quite appropriate for the trial court to consider all payments due up to the date of the hearing. *See generally Pet v. Pet*, 238 Md. 492, 497, 209 A. 2d 572 (1965); *Kapneck v. Kapneck*, 235 Md. 366, 368, 201 A. 2d 798 (1964); *Lewis v. Lewis*, 219 Md. at 318; *Carney v. Carney*, 16 Md. App. 243, 252, 295 A. 2d 792 (1972); *Woodall v. Woodall*, 16 Md. App. 17, 27, 293 A. 2d 839 (1972); *Colburn v. Colburn*, 15 Md. App. 503, 515, 292 A. 2d 121 (1972). *See also Ex parte Townsend*, 177 Ok. 286, 59 P. 2d 279 (1936). While at a suit of law, the rights of the parties are determined as of the beginning of the suit; a decree in equity is a determination of the rights of the parties to the suit according to equity and good conscience, and where relief is granted by the decree in equity it is such as the nature of the case demands, not at the time of the inception of litigation, but at the time the decree is entered. *See Carney v. Carney, supra* at 252; *Baker v. Salzenstein*, 314 Ill. 226, 145 N. E. 355. *Compare Lukat v. Lukat*, 21 Md. App. 354, 319 A. 2d 818, where statute requires grounds for divorce must arise prior to filing of bill or supplemental bill.

The petition for contempt having recited that the appellant was in default in making the alimony and support payments required by the divorce decree, we think Mr. Garland had adequate notice that the court would consider all such defaults up to the date of the hearing and properly include them in its decree.

Mr. Garland also alleged the trial court was clearly erroneous in finding him in contempt because of interference with his wife's right to one-half of the savings & loan account. The divorce decree awarded to Mrs. Garland one-half of the money in the joint account, which then contained $9,037.95. When the appellant became delinquent in payment of Federal Income taxes for 1971, he advised the Internal Revenue Service of the account, whereupon the

government levied in the amount of $3,914.94. Thereafter, Mr. Garland withdrew $2,962.65 or one-half of the remaining balance; Mrs. Garland withdrew the remainder. The record shows that the taxes, although due on a return co-signed by Mrs. Garland, represented taxes on the appellant's income which were due at the time of the original decree. The trial judge's finding of contempt in Mr. Garland's maneuvering of the tax claim, instead of paying it from his part of the account, was supported by the evidence; consequently, the finding was not clearly erroneous.

## III Amendment of the Decree

Prior to the taking of testimony at the hearing on Mrs. Garland's petition, the trial judge stated that he would not consider that portion of the petition which sought to modify the divorce decree, then on appeal, absent a showing of change of circumstances since the decree. In the petition, Mrs. Garland had asked for an increase in the alimony and support payments because Mr. Garland had arranged for the tax lien to be served on the monies in the savings and loan account before it was divided. During the course of the hearing, it developed: that Mrs. Garland had been employed at a salary of $42.28; that the oldest daughter, who had been living with Mrs. Garland had since gone to live with Mr. Garland; that there was an increase in Mr. Garland's cost of living; and that Mrs. Garland had no money to pay counsel fees. During the hearing the judge announced that, in view of the material change in circumstances, he would reconsider the original decree. This he did to the extent that he reduced Mr. Garland's support payments from $120 a week to $105 a week. This reduction reflected the fact that one daughter voluntarily left the custody of the mother, thus Mr. Garland was ordered to begin paying $35 a week for each of three children instead of $120 a week for four children. The court refused to reduce the support payments to the extent of the full $30, which had been paid for the child's support, because the mother's expenses to maintain the household had not been proportionately reduced to that extent. The finding is supported by common knowledge, so

we cannot say that the chancellor was clearly erroneous. The appellant's argument, that Mrs. Garland had sought to increase the payments on another ground rather than on the grounds which were developed by the evidence, is in our mind without significance; the petition did seek to modify the amount of the support payments. Neither do we consider the trial court's failure to specifically mention in its opinion the wife's income of $42.28 per week or the father's expense of maintaining a new home of any moment. *See Levy v. Bernstein*, 237 Md. 552, 555, 207 A. 2d 98 (1965); *Warren v. Warren*, 218 Md. 212, 217, 146 A. 2d 34 (1958); *Lott v. Lott*, 17 Md. App. 440, 445, 302 A. 2d 666 (1973).

## IV Counsel Fees

The trial judge, after finding that the institution of the proceedings was reasonable, awarded to the appellee's counsel $300. In our examination of the record, it seems that there was sufficient testimony to show that Mrs. Garland owned stocks of limited value; received a small weekly salary; had an equity in the house, a bank account of $50 and a 1968 Nova car on which she owed $600. There was also testimony as to Mr. Garland's financial status. We think the court had sufficient facts before it to make a determination that Mr. Garland should pay counsel fees.

## V Children's Bank Accounts

During the course of the hearing, it developed that Mrs. Garland had closed out two of her children's savings and loan accounts by surrendering their passbooks and receiving checks for the amounts due. The trial judge directed that she surrender those checks to the court, which would hold the monies until the children reached majority or until orders of court were obtained for the benefit of a minor child in need. Mr. Garland contends this was error. We are unable to see how the appellant was in anyway injured by the court's action, however arbitrary it may have been. Mrs. Garland did not appeal.

Finally, Mr. Garland points to the preceding alleged

irregularities and makes the bald allegation that he was denied due process because of all of them. We have examined each issue in detail and find that the decree should be affirmed as rendered for the reasons given under each specific issue. Appellant cannot traverse the mathematical axiom, that the whole cannot be exceeded by the sum of its parts, by alleging that all the preceding contentions when considered together could amount to due process violations, if there is no reversible error in any one of them.

*Decree affirmed.*

*Appellant to pay the costs.*