## THOMAS A. GARLAND *v.* MARY R. GARLAND

[No. 124, September Term, 1975.]

*Decided January 28, 1976.*

46

The cause was argued before MORTON, POWERS and MASON, JJ.

*Terry B. Blair* and *William T. Glasgow* for appellant.

No appearance for appellee.

POWERS, J., delivered the opinion of the Court.

This appeal is from an order entered in the Circuit Court for Baltimore County by Judge Kenneth C. Proctor finding the appellant in contempt of that court. Because procedural requirements and the manner of the punishment flow from the nature of the proceeding, *State v. Roll and Scholl,* 267 Md. 714, 730, 298 A. 2d 867 (1973), which modified and affirmed *Roll and Scholl v. State,* 15 Md. App. 31, 288 A. 2d 605 (1972), we shall first examine the law relating to contempts.

The Court of Appeals said in *State v. Roll and Scholl, supra,* at 727:

"Today, contempts are classified as civil or criminal and at least in theory either of these may be direct or constructive. The various categories are not mutually exclusive and in fact the nomenclature assigned to a contempt involves both classes, *e.g.,* a constructive civil, or a direct criminal contempt. Historically, criminal contempts were positive acts which offended the dignity or process of the court. Holding an offending party in contempt of court was designed to vindicate the authority and power of the court and punish disobedience to its orders. The people were considered as the real interested parties to prosecution and the State was generally the prosecutor."

The Court went on to say, at 728:

" * * * the distinction between the two types of contempt has been preserved and is important. A civil contempt proceeding is intended to preserve

and enforce the rights of private parties to a suit and to compel obedience to orders and decrees primarily made to benefit such parties. These proceedings are generally remedial in nature and are intended to coerce future compliance. Thus, a penalty in a civil contempt must provide for purging. On the other hand, the penalty imposed in a criminal contempt is punishment for past misconduct which may not necessarily be capable of remedy. Therefore, such a penalty does not require a purging provision but may be purely punitive. In this State, to these factors must be added the degree of proof required to establish a contempt — a civil contempt need be proved only by a preponderance of the evidence, while a criminal contempt must be shown beyond a reasonable doubt."

Basic criteria applicable for determining if a proceeding is for civil contempt were delineated in *Winter v. Crowley*, 245 Md. 313, 226 A. 2d 304 (1967). They have been quoted in *State v. Roll and Scholl, supra; McDaniel v. McDaniel*, 256 Md. 684, 262 A. 2d 52 (1970); and *Pearson v. State*, 28 Md. App. 464, 347 A. 2d 239 (1975), and we need not repeat them here.

With these authorities in mind, we look to the Maryland Rules, Subtitle P, which govern procedures in contempt cases. Beyond providing, Rule P2, that the subtitle shall apply to both, the P Rules make no attempt to distinguish between civil contempts and criminal contempts. For the distinction between constructive and direct contempts we look to Rule P1, which contains these definitions:

"a. *Direct Contempt.*

A 'direct contempt' means a contempt committed in the presence of the court, or so near to the court as to interrupt its proceedings.

b. *Constructive Contempt.*

A 'constructive contempt' means a contempt

which was not committed in the presence of the court, or so near to the court as to interrupt its proceedings."

By a decree entered in the Circuit Court for Baltimore County on 16 May 1973 the appellee here, Mary R. Garland, was granted a divorce from the appellant, Thomas A. Garland. The decree contained orders concerning custody and support of children, and alimony. The decree was later modified in some respects not material to this appeal.

The current phase of the original case began with a "Petition For Contempt Citation" filed by Mrs. Garland on 23 December 1974. On the same day the court issued a Show Cause Order. That order was not served, and the court, on 30 January 1975 issued another, identical with the first except for dates. It ordered:

"* * * that the Defendant, Thomas A. Garland, show cause on or before the 14th day of February, 1975, why the relief prayed in the foregoing Petition should not be granted, provided a copy of the Petition and this Order be served upon him or his attorney of record on or before the 6th day of February, 1975."

Timely service of the order and the petition was made. Mr. Garland responded by filing a combined answer and motion to dismiss. Although there is no written order or docket entry in the record, it is apparent that the case was set for a hearing, to be held on 3 March 1975, and that Mr. Garland had notice of the hearing date. The record contains a transcript of proceedings held on 4 March 1975, concluding with the finding of contempt from which this appeal was taken. Mrs. Garland, the nominal appellee, filed no brief and made no argument in this Court.

Mr. Garland's response to the petition and the show cause order was, as we have said, a combined answer and motion to dismiss. He asserted that the order was illegal because it failed to comply with Rule P4; that the petition lacked the character of a contempt proceeding in that it did not allege

that he was at fault in any failure to comply or was deliberately failing to comply with the order of the court, but required him to respond to allegations of a private party rather than to findings of the court. He also contended that the order was invalid because it violated Rule 324 b 3 by requiring an answer sooner than 10 days from the date of service.

By way of showing cause why the relief prayed should not be granted Mr. Garland answered that "Any failure on his part to comply with the orders of this Honorable Court has been the result of inability to do so and without any intent to frustrate, avoid or otherwise circumvent the said Order."

With this factual outline, and in the light of the controlling authorities, we have no difficulty in holding that Mr. Garland was charged with a constructive civil contempt. The procedure to be followed is prescribed in Rule P4, Constructive Contempt, which we set out in full:

"a. *Who May Institute.*

Constructive contempt proceedings may be instituted by the court of its own motion, by the State's attorney or by any person having actual knowledge of the alleged contempt.

b. *Notice to Defendant.*

1. Show Cause Order.

(a) Issuance.

If the court determines to cite the defendant for contempt, it shall issue an order requiring the defendant to show cause why an order adjudging him in contempt shall not be passed within the time stated therein.

(b) Contents.

The show cause order shall state the time and place of hearing, allowing a reasonable time for the preparation of the defense, and shall state the essential facts constituting the contempt charged.

(c) Service.

The show cause order shall be served upon the

defendant pursuant to Rule 104 (Service of Process — Generally) unless the defendant has appeared as a party in the action in which the contempt is charged, in which case service shall be in the manner prescribed by the court.

2. Written Statement.

A copy of any writing or document filed in support of the alleged contempt shall also be served upon the defendant.

c. *Default — Answer.*

If the defendant shall answer, the charge shall be set for hearing. If no cause be shown within the time named in the order, the case shall be heard *ex parte.*

d. *Hearing.*

1. Appointment of Prosecutor.

The court may designate the State's attorney or any other member of the bar to prosecute the proceeding.

2. When Judge Disqualified.

Unless a defendant otherwise consents, the judge who issued a citation for constructive contempt shall be disqualified from presiding at the hearing except where such contempt consists of failure to obey an order or judgment in a civil case."

In his brief in this Court appellant states the single Question Presented in this way:

"Can there be an adjudication of constructive contempt without compliance with the Maryland Rules as to the pleadings, the preliminary orders and a 'hearing' in fact?"

Obviously the question as worded requires a negative answer. We shall rephrase the question, and ask ourselves whether there was, in this case of constructive civil contempt, substantial compliance with the applicable rules, including a hearing, and whether the facts before the court,

with rational inferences, were sufficient to permit the court to find, by a preponderance of the evidence, that the appellant was in contempt of court.

Appellant does not contend on appeal that the petition which initiated this proceeding was insufficient because it did not affirmatively allege that he was able to pay; he does not contend that he was denied due process of law because the show cause order required an answer eight days after service rather than 10 [1] days, as provided in Rule 324 b 3. Still another question of pre-hearing procedure, apparent from the record, is not argued here. That is that the show cause order did not state the time and place of hearing, as Rule P4 b 1 (b) requires. The time and place of such proceedings as were held, which appellant contends was not a hearing, were set later, some time after appellant filed his answer. He does not claim that notice was not given.

What occurred between the filing of Mr. Garland's answer and motion to dismiss on 18 February 1975, and 4 March 1975 when he was found to be in contempt of court, we must piece together from the record, from appellant's brief, and from statements made by appellant's counsel during oral argument. The record contains a letter dated 21 February 1975 from Mrs. Garland's counsel to the clerk transmitting an order directing the clerk to issue a summons for Thomas A. Garland to appear in court in Towson on 3 March 1975 at 10:00 A.M. It does not appear that a summons was actually issued, although next in the record are a receipt for certified mail addressed to Mr. Garland and a return receipt signed with the name "William Glasgow", who is one of Mr. Garland's attorneys of record. Neither bears a date.

Appellant's brief tells us "The case was scheduled for hearing on March 3, 1975." We are told that no hearing was held at that time but that counsel for both parties talked with Judge Proctor. It was explained to Judge Proctor that Mr. Garland, a practicing attorney, was appearing in a case in the City of Baltimore and was unable to be present. There

---

1. The record shows that the order was served on 6 February 1975 and that Mr. Garland's answer was filed on 18 February 1975, 12 days later.

was a suggestion of an amount to be paid immediately to reduce the arrearage, and of a schedule for increased payments in the future, with the excess of each payment over the amounts currently accruing to be applied against the remaining arrearage. It appears that a tentative agreement was reached, but that Judge Proctor insisted that Mr. Garland appear personally before him the next day and that the agreement be made a matter of record. Although there is no docket entry reflecting it, we think it may be said that the hearing scheduled for 3 March 1975 was continued to the following morning, 4 March 1975.

In *Reamer v. Reamer*, 246 Md. 532, 229 A. 2d 74 (1967), the Court of Appeals reversed a finding of constructive contempt against a former husband, who was never served with a copy of the show cause order or the petition. The Court reviewed the requirements of Rule P4, and said, at 535:

"These rules are declaratory of the basic requirements of due process of law in the prosecution of constructive contempts."

We cited *Reamer* in *Savage v. State*, 19 Md. App. 1, 308 A. 2d 701 (1973), *cert. granted*, 270 Md. 742 (1973), *appeal dismissed*, 12 December 1973. We said, at 16:

"The procedure followed by the court was in substantial compliance with Rule P4 concerning constructive contempt actions."

Here too, we hold that the proceedings leading up to the hearing held on 4 March 1975 were in substantial compliance with the requirements of due process of law as expressed in Rule P4.

The transcript of the proceedings which took place on 4 March 1975 opens with comments by Judge Proctor and counsel for both parties to summarize the discussion of the previous day. There was agreement that the arrearage amounted to $3,685; that the sum of $1,000 was to be paid on that day and an additional payment of $200 was to be made on 24 March, and that one half of both would be applied to

the arrearage. The other $600 from these two payments would be applied to the weekly payments to accrue in the next four weeks, and thereafter double payments would be made weekly, with one half to apply to the remaining arrearage.

At this point Mr. Garland interposed, "Your Honor, that's — the first part of that sounds good, but no way in God's earth I can promise to pay $200.00 a week on March 1st or any other time." After some colloquy, Judge Proctor said: "Mr. Garland, you have a choice and that is, you are either going to pay so that these arrears — I'm being lenient with you by doing this. This is a proposal that Mr. Glasgow made yesterday to get you out of this mess." Mr. Garland stated that the payments proposed were more than he earned and that he could not make that promise in good faith to the court. The court made it clear that the only thing before him was that the defendant owed $3,685 of arrears, and the question was whether he was in contempt of court. Mr. Garland then tendered to the court what he described as a written statement, which was included in the record. It consists of some 17 handwritten pages, which Mr. Garland said he wanted to keep confidential except for counsel. The judge said, "Hand it back and tell me what it says in substance."

Further colloquy took place, largely between Judge Proctor and Mr. Garland, with some participation by counsel. Mr. Garland mentioned other debts and obligations, legal and moral, which he had.

We see nothing in the transcript to indicate that Mr. Garland was not afforded a full opportunity to present any facts he wished to present to the court. The proceedings were concluded when Judge Proctor said:

> "Well, I am not going to fool with you. Stand up, Mr. Garland. I find you in contempt of court. The sentence is you are sentenced to the Baltimore County Jail for six months. Purge yourself of contempt, you can get out. Sit right there until I get a sheriff."

We are satisfied that this proceeding was a hearing or, at the least, was an opportunity for whatever hearing the appellant wanted to have. Aside from his experience as a practicing attorney, it appears from the record in this case that Mr. Garland was quite familiar with hearings on citations for contempt for failure to pay money which the court ordered him to pay. A previous contempt finding in this same case reached this Court and was affirmed in *Garland v. Garland,* 22 Md. App. 80, 321 A. 2d 808, *cert. denied,* 272 Md. 741 (1974).

Even though the proceedings did not in all respects follow the conventional pattern — the evidence was not presented in question and answer form under oath — Mr. Garland was in no way restricted in his presentation.

It is not contended here that at the hearing there was a burden on the petitioner to make an affirmative showing by evidence that Mr. Garland was able to pay. To be sure, inability to pay may be offered as a defense, but the defendant must show it. In *Johnson v. Johnson,* 241 Md. 416, 216 A. 2d 914 (1966), the Court of Appeals had before it the propriety of holding in contempt a father who had failed to comply with an order that he make payments for support of his children. The Court remanded the case, without affirmance or reversal, for further proceedings. It said, at 418-20:

> "The father contends that through no fault of his own he was unable to make the payments required by the court, that the lower court erred in refusing to reduce the amount of the support payments and that he should not have been adjudged to be in contempt. Whether or not the father was subject to incarceration depends on whether he was able to meet the obligation imposed on him by the support order.

> * * *

> "If the father was unable to meet his obligation

because he had neither a sufficient estate nor the then ability to pay, as the record seems to indicate, the court was not justified in incarcerating him. For a year or more he had claimed that he was unable to meet the obligation imposed on him by the decree. He had filed several petitions for the reduction of the support payments which were either denied or not even heard. And when he offered to testify as to his earning capacity and his ability generally to meet his obligation, the court stated that it was not inclined to take his testimony. Until he was given an opportunity to show that he had neither the estate nor the ability to pay his obligation and failed to make such a showing, he should not have been incarcerated. The purpose of imprisonment for contempt is to compel compliance with a court order but where the person alleged to be in contempt can establish a valid defense, such as the unintentional inability to obey the order, imprisonment is not proper."

In the case before us, Mr. Garland was given an opportunity to show that he had neither the estate nor the ability to pay his obligation. He failed to make such a showing to the satisfaction of Judge Proctor. We think Judge Proctor's finding was supported by the evidence before him and was not clearly erroneous. Maryland Rule 1086.

We note that the commitment in the record and the clerk's docket show the sentence to be six months in the Baltimore County Jail. The clerk failed to give effect to Judge Proctor's statement when he imposed the sentence, "Purge yourself of contempt, you can get out." In *McDaniel v. McDaniel, supra,* the Court of Appeals pointed out that the finding of contempt against a non-paying father and the sentence that the court imposed for that contempt were proper, except for the requirement that in a civil contempt case the contemnor must be given the right to purge himself. The Court remanded the case for modification and, as modified, affirmed. In this case the clerk of the lower court should

56

correct the docket entry and the commitment to conform to the court's order.

> *Order affirmed.*
> *Case remanded for correction of docket entry and commitment.*
> *Appellant to pay costs.*