LANDOVER ASSOCIATES LIMITED PARTNERSHIP
ET AL. *v.* FABRICATED STEEL
PRODUCTS, INC.

[No. 945, September Term, 1976.]

*Decided April 15, 1977.*

The cause was argued before MENCHINE, DAVIDSON and LOWE, JJ.

*Frank B. Haskell, III,* with whom were *Mitchell, Haskell & Duley* on the brief, for appellants.

*Lawrence A. Melfa,* with whom was *Thomas L. Hennessey* on the brief, for appellee.

LOWE, J., delivered the opinion of the Court.

Because we are accustomed to a judicial procedure requiring proof of a claim by procuring a judgment prerequisite to obtention of a lien, the pre-*Barry* [1] statutory "mechanics' lien" takes on an Alice in Wonderland quality.[2] Notwithstanding there was a similar possessory lien at common law, the concept of lien-first, judgment-after, does not comport with our traditional sense of systemic justice, but it was, until *Barry Properties v. Fick Bros.,* 277 Md. 15,

---

1. Barry Properties v. Fick Bros., 277 Md. 15, decided February 10, 1976.
2. See *Alice's Adventures in Wonderland,* Chap. 12, p. 187:

"No, No!" said the queen. "Sentence first — verdict afterwards."

the law of Maryland for 185 years. Under Md. Code, Real Prop. Art., § 9-101 through § 9-113, the lien was created and attached to the property as soon as work was performed upon the property or materials supplied to it. The law presupposed a contract, but its absence could have been raised as a defense.

The lien's initial life was 180 days but it could be extended for an additional year by properly recording it with the clerk of court. The property owner had the right to bring proceedings to compel proof of validity of the lien, and if he did not do so the claimant was required to commence proceedings to enforce it within that year, or lose it.

Appellee, Fabricated Steel Products, Inc. (Fabricated), recorded its lien against appellant Landover Associates Limited Partnership (Landover) on March 12, 1975. The general contractor of Landover, Burroughs and Preston, Inc. (Burroughs), who had engaged Fabricated as a subcontractor, petitioned the Circuit Court for Prince George's County on March 26, 1975 to release the lien and offered to substitute the cash amount of the claim underlying the lien. Fabricated, with some qualifications, consented to the release. The consent agreement concluded:

> "The substitution in no way releases or relinquishes the claim of Fabricated Steel Products, Inc. and reserves its claim and each [and] every facet thereof as though the land were still the subject of the proceedings."

An order permitting the substitution was granted. This order was subsequently supplanted by an order permitting substitution of a bond for the cash. A bill of complaint to enforce the mechanics' lien was filed on April 7, 1975 against Landover. There was some confusion in the case as to which of two cases the bond applied, because the petition to release the lien received one number and the subsequent petition to enforce the lien received another. The issue was settled by an order granting Fabricated's motion to consolidate and to amend "so as accurately to reflect the status of the case as it now exists." The amended bill of complaint included the

bonding company, Maryland Casualty Company, as well as Burroughs, as defendants.

On December 16, 1975 Landover demurred to the bill of complaint on the grounds

> "That the Maryland's Mechanics' Lien Statute is unconstitutional ..."

and that

> "the burden of instituting judicial inquiry as to the bona fides of the claim and/or its validity, rests upon the defendants [sic ?]."

The court overruled the demurrer and permitted Landover time to answer. Following the answer, a full hearing was held on the bill to enforce, which resulted in a decree that found "a valid Mechanics' Lien ... to exist in favor of the Plaintiff as against the Defendants".

Six issues are raised on appeal by appellants Landover, Burroughs and Maryland Casualty.

I

> "Does the unconstitutional nature of the previous Mechanics' Lien Statute with respect to procedural **due process of law bar the Plaintiffs/Appellee's** suit to enforce a mechanics' lien?"

The short answer is "no". The reasons are not so succinct.

Appellants rely most heavily on a footnote in *Barry supra,* to distinguish the instant case from the result in *Barry.* Meeting the question of the constitutionality of the Mechanics' Lien law in that case, the Court's holding was that:

> " ... under the current statute there can be no existing lien on property until and unless the claimant prevails either in a suit to enforce the claimed lien or in some other appropriate proceeding providing notice and a hearing (*i.e.,* a declaratory judgment action)." 277 Md. at 37.

But the Court decided the remainder of the statute could stand since the defective portions were severable:

> "We think that this can be accomplished by exercising that portion of the statute which purports to create a lien from the time work is performed or materials furnished to the time a lien is established by judicial determination . . . ." *Id.* at 37.

The holding transformed the lien from an absolute security which attached against a given property as the debt was incurred, to a "claimed" security right against that property subject to proof, as any other claim. In short, placing the lien before the judgment was "stuff and nonsense".[3] If one has a claim it must be proved before a lien attaches.[4]

Appellants are misled by the application of *Barry's* facts to its holding. The result of that case was to allow the lien to attach because the claimant had prevailed in the suit to

---

**3.** "Stuff and nonsense!" said Alice loudly. "The idea of having the sentence first!" *Alice's Adventures in Wonderland, op. cit.*

**4.** *But see* Mitchell v. W. T. Grant Co., 416 U. S. 600, 611 where a plurality of the Court (four members) explained the cases upon which *Barry* was founded, *i.e.,* Sniadach v. Family Finance Corp., 395 U. S. 337 and Fuentes v. Shevin, 407 U. S. 67, with the following language:

> "Their import, however, is not so clear as petitioner would have it: they merely stand for the proposition that a hearing must be had before one is finally deprived of his property and do not deal at all with the need for a pretermination hearing where a full and immediate post-termination hearing is provided. The usual rule has been '[w]here only property rights are involved, mere postponement of the judicial enquiry is not a denial of due process, if the opportunity given for ultimate judicial determination of liability is adequate.' " 416 U. S. at 611.

This was interpreted by a fifth member of the Court, Mr. Justice Powell, concurring in the result, not as explaining *Fuentes, supra,* but as overruling it:

> "In sweeping language, Fuentes v. Shevin, 407 US 67, 32 L Ed 2d 556, 92 S Ct 1983 (1972), enunciated the principle that the constitutional guarantee of procedural due process requires an adversary hearing before an individual may be temporarily deprived of any possessory interest in tangible personal property, however brief the dispossession and however slight his monetary interest in the property. The Court's decision today withdraws significantly from the full reach of that principle, and to this extent I think it fair to say that the Fuentes opinion is overruled." 416 U. S. at 623.

enforce the claimed lien. This suit satisfied the due process prerequisite of a hearing. The Court pointed out that the property owner "knew of the [claimant]'s claim to a lien sometime well prior to the [claimant]'s institution" of the enforcement action but failed to challenge "the lien's validity at that point". The Court then concluded that the property owner "elected not to assert any right it may have had to have its position determined as of a time earlier than the hearing . . . ." *Id.* at 38. The Court therefore concluded that before the final determination by the chancellor at the conclusion of the enforcement hearing, the property owner had been provided with notice and a hearing.

As indicated, appellants' reliance rests primarily upon a footnote in the course of the Court's discussion in *Barry,* wherein it attempted to distinguish the *Barry* facts from the Supreme Court cases:

> "14. In this regard we mention that in neither *North Georgia Finishing* [, *Inc. v. Di-Chem. Inc.,* 419 U. S. 601], *Mitchell, Fuentes* nor *Sniadach,* [all *supra,* n. 3] in contradistinction to this case, was there an adjudication on the merits of the creditor's claim. Rather, in each of those cases the property owner sought, by way of an injunction, declaratory judgment, motion to dismiss, motion to dissolve or some other similar procedure, to defeat the particular prejudgment creditor remedy at a point prior to an adjudication on the merits, with the appeal being taken from the denial of the requested action and without there being a determination of the underlying claim." *Id.* at 38.

Landover contends that its demurrer on constitutional grounds was an "other similar procedure" placing it in a position to defeat the creditor at a point prior to an adjudication on the merits.

The demurrer was overruled by Judge Ernest A. Loveless, Jr., although he did not hear the case on its merits. Implicit in his holding was the theme that the demurrer was not an attack on a then-existing lien so much as it sought to

eliminate the claim to the lien which was subject to adjudication upon the hearing to enforce. After pointing out the care taken by the Court of Appeals to preserve as much as possible of the Mechanics' Lien law, he explained that:

> "Footnote 14 would have been applicable had the land owner sought to remove a recorded lien on the Land records, considered as a cloud on the title, as to the property on which it was claimed prior to a judicial determination, or some other similar remedy. Under the majority opinion this case and the action on the land would certainly appear to fall under the 'suit to enforce the claimed lien or in some other appropriate proceeding' *supra*."

We agree with Judge Loveless. The Court of Appeals by example indicated that it would preserve the rights of a claimant to the extent that he had provided the due process prerequisites to the owner, and would not let the form of the action destroy its substance if fundamental fairness was maintained. We further note, as indicated by *Mitchell v. W. T. Grant Co., supra,* "due process" is not offended because there was no deprivation of property prior to a hearing.

Landover did not raise the constitutional issue until eight months after the enforcement action commenced, and then directed its attack, not upon the question of the then-existence of the lien, but rather at the whole proceeding, contending that it was invalid on the theory that the entire statute was unconstitutional. The effect of Judge Loveless' opinion was that which we regard as the effect of *Barry, i.e.,* that prior to a hearing "no such lien attaches to the real estate". *Residential Industrial Loan Company, Inc. v. Manual M. Weinberg, Trustee et al.,* 279 Md. 483 (1977). Thus *Barry* had the effect of transforming the "Bill of Complaint to *Enforce* a Mechanics' Lien" into a "Bill of Complaint to *Establish* a Mechanics' Lien". The fact that Burroughs chose to provide some security with the court pending the proceeding rather than treat the lien as "void *ab initio*", *Barry* at 38, was an act of volition on its part, an act which it cannot now contend to have been a deprivation of

property. No ruling was ever sought as to whether a lien had attached to the property, and to permit the security to be filed in lieu of an assured lien was not an error on the court's part. It is errors of court we review — not errors of judgment by the parties. See *Braun v. Ford Motor Co.*, 32 Md. App. 545.

Here, as in *Barry*, it is not unreasonable to permit the claimant to pursue his claim without returning him to square one, since Landover had not sought a ruling on the nonexisting lien, but only sought to obviate prior proceedings to establish the claim. To begin again when procedural due process was not denied would serve no justifiable purpose.

## II

### Notice by Registered Mail

Appellee introduced a copy of a letter addressed to Landover entitled "Notice of Intention to File Mechanics' Lien". Two receipts came in with the letter, one showing that the letter was sent by certified mail and one that it was received by someone whose signature was not sufficiently legible to be identified. The address at which the letter was received was the same as that at which subpoena service was made upon Landover, as indicated by the sheriff's return.

Appellants contend that "something more than merely mailing a registered letter is required to give notice to the owner", and because of the illegible signature, they contend, appellee failed to prove notice pursuant to the statute in force at the time.

We cannot follow that reasoning. The statute then extant was Real Prop. Art., § 9-103, which said in pertinent part that:

> " . . . the person doing the work or furnishing the material, or both is not entitled to a lien unless, . . . he or his agent gives notice in writing, *which may include registered mail,* to the owner or agent if the owner or agent resides in the county, of his intention to claim a lien." (emphasis added).

For at least a century past, Maryland has recognized a "legal presumption" from proof of proper mailing that the communication was received. *Yoe v. The Benjamin C. Howard Mutual Benevolent Association*, 63 Md. 86, 92; *Kolker v. Biggs*, 203 Md. 137, 144; *McFerren v. Goldsmith-Stern Co.*, 137 Md. 573, 18 A.L.R. 1125. This presumption is based upon a further presumption that in delivering the mail the postal authorities do what the law requires of them, *Fidelity & Casualty Co. v. Riley*, 168 Md. 430, 433 (in delivering a registered letter). We see no error in the admission of the letter. Moreover, it was a sufficient compliance with the requirements of Real Prop. Art., § 9-103, to warrant a finding of notice to the owner of a *claimed* lien.

### III

### Evidence of the Mechanics' Lien

Appellants contend that because appellee did not "move into evidence" the claim for mechanics' lien recorded with the clerk of court, it failed to meet its burden of proof and the complaint for enforcement should have been dismissed.

Again we disagree. The court can obviously notice its own records, *Garland v. Garland*, 22 Md. App. 80, 82-85, which here include the recorded claim. Citing 9 J. Wigmore, *Evidence*, § 2579 (3d ed. 1940) Judge Thompson in *Garland* set forth the rule for this Court:

> " 'However, for reasons of convenience, where controversy is unlikely and the expense of a copy would be disproportionate, Courts are often found taking notice of the tenor or effect of some part of a judicial proceeding, without requiring formal evidence. Since this dispensation is not obligatory on the part of the Court, and since it must depend more or less on the practical notoriety and certainty of the fact under the circumstances of each case, little uniformity can be seen in the instances. It is often done for a part of the record in

the *same proceeding,* or in a *prior stage of the same controversy;* less often for the record of a *distinct litigation,* especially when in another Court.' " *Id.* at 83.

The petitions praying substitution of cash and bond for the property, which were filed in the record, gave a thorough description and reference to the lien claim, as do the pleadings to enforce, which contained a copy of the recorded lien. By their pleadings appellants acknowledged the lien and their conduct never belied it. In fact, their counsel, who can bind them by admissions in opening statement, *McLhinney v. Lansdell Corp. of Md.,* 254 Md. 7, 13; *Lust v. Kolbe,* 31 Md. App. 483, 491, did precisely that when he stated to the court that "A lien was filed by the plaintiffs."

## IV

### Sufficiency of Setoff Evidence

Appellants argue that the court missed the thrust of their setoff contention and as a result erred on two factual conclusions (*i.e.,* cold weather delay and Burroughs' delay). Because we have reviewed the entire record and have found sufficient evidence upon which the court could have reached its conclusions, we see no purpose to be served by discussing each of appellants' theories. Suffice to say we could not find the chancellor clearly erroneous — and that is the test we must apply. Md. Rule 1086.

## V

### Effect of Reenactment of the Statute

Appellants contend here, but did not below, that because the mechanics' lien statute was "repealed and reenacted", a hiatus was created in the law compelling appellee to begin again under the new rules because "repeal" divested appellee of all inchoate interests. Without going into appellants' misunderstanding of legislative procedure, we decline to recognize this issue because it was not tried and decided by the lower court. Md. Rule 1085.

## VI

### The Decree, *in Personam* or *in Rem*

Appellants, who at oral argument admitted that they had consented to the form of the decree, now attack that form. They point out that the proceeding to enforce a mechanics' lien is exclusively *in rem, Clark Concrete Co. v. Lindberg,* 216 Md. 576, 582; *Gaybis v. Palm,* 201 Md. 78, 83, but that the decree is in the nature of an *in personam* one because it was entered against all of the defendants, Landover, Burroughs and Maryland Casualty.

Such error as may appear is an error of form and lack of clarity. The scope of the judgment may not exceed that to which the lien sought was entitled to attach; *i.e.,* as to the property owner, the property; and as to the contractor and its surety, the bond they elected to post. Such error as appears in the decree was not harmful or prejudicial, *Adams v. Benson,* 208 Md. 261, 269; *Blondes v. Hayes,* 29 Md. App. 663, nevertheless we will vacate the decree for revision upon remand pursuant to this opinion.

> *Decree vacated and case remanded for revision pursuant to this opinion.*
> *Costs to be paid by appellants.*