936 A.2d 906

**In re JULIANNA B.**

**No. 2796, Sept. Term, 2005.**

Court of Special Appeals of Maryland.

Dec. 5, 2007.

Stephen B. Mercer, Rockville, for Appellant.

Steven L. Holcomb (J. Joseph Curran, Jr., Atty. Gen. on the brief), Baltimore, for Appellee.

Panel: MURPHY, C.J., JAMES R. EYLER and JAMES S. GETTY (Retired, specially assigned), JJ.

MURPHY, C.J.

In the Circuit Court for Montgomery County, Julianna B., appellant, was adjudicated a delinquent as a result of a finding

that she committed a second degree murder on September 23, 2005. She now presents three issues [1] that we must review:

1. Whether sufficient evidence of malice exists to sustain a second degree murder charge where the State produced decisive evidence of mitigation in its case-in-chief[.]

2. Whether the trial court misconstrued the law of impartial self-defense when it excluded the defense in a situation applicable to the facts of the instant case, *to wit,* use of deadly force in a non-deadly confrontation[.]

3. Whether the trial court improperly shifted the burden of proof to the Respondent to prove perfect and imperfect self-defense, instead of requiring the State to negate these mental states once raised by the evidence[.]

There is no merit in the argument that the State's evidence was insufficient as a matter of law to establish that she committed a second degree murder. A rational trier of fact could reasonably conclude that, when she intentionally inflicted the fatal stab wound on the victim's person, appellant did so with the intent to kill the victim and/or with "intent to injure the victim so severely that death would be the likely result even though the [respondent] did not intend that the victim should die." *Thornton v. State,* 397 Md. 704, 741, 919 A.2d 678 (2007).

Appellant argues, in the alternative, that the circuit court erroneously applied the doctrine of "imperfect" self-defense. According to appellant, although the circuit court did address the issue of whether appellant had a subjective—but objectively unreasonable—belief that she was in danger of death or serious bodily injury when she stabbed the victim, the circuit court failed to address the issue of whether she had a subjec-

---

**1.** Appellant also asks us to determine "[w]hether the judgments of involved for the charges of carrying a concealed deadly weapon and possession of a deadly weapon on school grounds must be vacated where the State failed to negate the penknife exception and did not establish that the Respondent possessed a qualifying weapon on public school property[.]" We agree with appellant that these judgments should be reversed.

tive—but objectively unreasonable—belief that the amount of force she used at that point in time was necessary under the circumstances. In the words of appellant's brief, "believing herself to be in danger of imminent bodily harm, ... [she] used deadly force during a non-deadly force mutual combat." This argument is based upon the proposition that the defense of "imperfect" self-defense is applicable whenever the murder defendant had a "subjective belief" that the force he or she used was necessary to prevent *any* degree of harm. For the reasons that follow, however, we reject that proposition.

### The Ruling of the Circuit Court

After receiving evidence and considering argument of counsel, the circuit court delivered an on-the-record opinion that included the following findings and conclusions:

Now that I have presided over this trial, my role is to evaluate all the evidence and apply the law of Maryland to my findings. On the night of September 23, 2005, [the victim] and her friends, and [respondent] and hers attended a football game between Sherwood and Blake [High Schools] for legitimate reasons, and there was no conclusive evidence that any member of either faction was planning to fight.

\* \* \*

I don't know what was said during the last moments before [the fight between respondent and the victim began], but whatever was said or wasn't said, [the victim] walked towards [respondent] intending to fight.

Maryland recognizes three types of second degree murder. The first type is second degree murder, which is the killing of another person with either the intent to kill or the intent to inflict serious bodily harm that death would be the likely result. It does not require premeditation or deliberation.

For the respondent to be [found] involved [under] this type of second degree murder, the State must have convinced this Court beyond a reasonable doubt that the re-

spondent acted with the intention to inflict serious bodily harm; that death was a consequence of that harm. The State must have proved that the respondent committed this offense; that is, that [respondent] murdered [the victim] without any legal excuse or justification.

To convict the respondent of the second type of second degree murder, which is called depraved heart murder, the State must have convinced this Court beyond a reasonable doubt that the conduct of the respondent, one, caused the death of [the victim]; two, created a very high degree of risk of the life of [the victim]; and, three, that the respondent, conscious of such risk, acted with extreme disregard of the life-endangering consequence.

To convict the respondent of the third type of second degree called felony murder, the State must have convinced this Court beyond a reasonable doubt that the respondent committed a first degree assault and that death occurred during the perpetration of that assault.

\* \* \*

Self-defense in Maryland is comprised of five elements. The respondent must have had reasonable grounds to believe herself in apparent imminent and immediate danger of death or serious bodily harm from her assailant or potential assailant.

The respondent must have, in fact, believed herself in danger.

Three, the respondent claiming the right of self-defense must not have been the aggressor or provoked the conflict.

Four, the force used must not have been excessive and unreasonable. That is, the force must not have been more force than the exigency demanded.

And, five, the respondent was required to retreat before using deadly force if she could do so safely.

Maryland also recognizes imperfect self-defense. These elements are the same as perfect self-defense, except that actual subjective belief on the part of the accused that she

was in apparent imminent danger of death or serious bodily harm from her assailant is not an objectively reasonable belief.

If this Court finds [respondent] acted in perfect self-defense, [the victim]'s death would be justifiable or excusable, and I must acquit her. If I find she acted in imperfect self-defense, I must find her guilty of manslaughter, voluntary.

An aggressor is not entitled to the defense of self-defense. That is, if [respondent] initiated a deadly confrontation or escalated an existing confrontation to that level, she would not benefit from the shield of self-defense.

.... The respondent does not necessarily forfeit her privilege of self-defense because she previously armed herself in anticipation of an attack. However, the respondent has no right to arm herself. Furthermore, the respondent cannot arm herself if she is, in any sense, seeking an encounter.

\* \* \*

Let's look at ... the respondent, for a moment. A very intelligent 15–year–old girl, honor roll since elementary school. But, [respondent], you lied so much. You must have had trouble separating fact from fiction.

You inexplicably go back to the scene after you undoubtedly disposed of the knife to support your arrested sister. Or, upon hearing that [the victim] was on death's doorstep, because cell phone calls were made from your car, you figure that by going back and impersonating a harmless spectator, you might just go undetected or be able to say you stayed or returned to the scene. The blood on your shirt telegraphed your involvement. Your pesky cut was observed, and your lies began to cascade like Victoria Falls.

\* \* \*

However, lying doesn't make you guilty, [[respondent]]. Let's analyze the fight.

With respect to [the victim], I find that she was 5 feet, 5, and she weighed 225 pounds; that she was 15 years old; that she possessed no weapon at any time; that she only used her fists; that she threw the first punch; that she approached [respondent] as [respondent] stood still; that she pulled six hair extensions from [respondent]'s head; that she was unaware that [respondent] had a knife; that she had one knife cut on each arm consistent with defensive wounds; and that she had three cuts on her abdomen. She had a 3–1/2–inch stab wound to the left ventricle of her heart. The path was front to back and slightly downward. None of her friends possessed a weapon. She was twice [respondent]'s weight and probably a lot slower than [respondent].

With respect to [respondent], I find that [respondent] was about 115 pounds; that she never ran for help to the police or adults. She didn't ask to use a cell phone for help. She didn't ask ... the only male in the group, for help. She didn't run away. She didn't get in the Honda SUV and lock the doors or attempt to lock them. She probably engaged in verbal exchange with [the victim] or her group.

At the September 9, 2005 post-game activities, they tell us that she was not shy, demure, or timid. She was sassy, confrontational, crude, and foul with the spitting into the car. She was not afraid to pick a fight with another girl, even if she was five years older.

This Court also finds that she armed herself in advance with a knife, a deadly weapon. When [the victim] approached, she stood still with clenched fist and a secreted knife. As I indicated, she didn't retreat.

The Court also finds that she could have easily used the knife as a deterrent, displayed it verbally, and told [the victim] to get away and scream for help, "Get out of here. I got a knife."

During the fight, she cut [the victim] five times, once on each arm and three on the abdomen and a stab wound to her heart. [Respondent] did not seek protection behind, [her sister] who had a bat. . . .

\* \* \*

When [respondent] arrived at the SUV, she was armed and ready for battle. She had the knife, and [her sister] had a bat. There were many avenues of escape, avoidance, and deterrence. Her current lie, that [one of her friends] placed an object in her back pocket, that [respondent] knew it was a knife without asking for one, seeing it, touching it, [the friend] saying anything is preposterous.

[Respondent] and [the victim] squared off, and [the victim] punched first, and [respondent] followed suit. [The victim] got the better of her, and [respondent] pulled out her deadly dagger; [respondent] never falling; never being choked. Her lucid responses for hours and hours afterwards and her pristine face depicted in the photo by Crime Scene Specialist Clemens (phonetic sp.) gave testament to the State's theory of a one-on-one fight.

Once [respondent] pulled the knife, she slashed at [the victim] and made contact with her on six occasions, three cuts to [the victim]'s abdomen, one on each arm, which were consistent with defensive wounds, and a stab wound to the heart.

. . . . [Respondent] said she didn't know she stabbed [the victim]. As soon as [the victim] fell, [respondent] stopped fighting, and she immediately concealed the knife. These actions belie her statement.

Furthermore, the narrow wound to [the victim]'s left ventricle, which entered 3–1/2 inches, were straight in and straight out, which would indicate consciousness of penetration. The angle was front to rear and slightly downward. And based on their respective heights, it is clear to me that [respondent] was not slashing, was not stabbing up at [the victim], and that her motion was overhand.

[Respondent]'s action after the stabbing point directly to the intentional desire to seriously injure [the victim]. [Respondent] tried to get in the SUV to escape. Foiled by the crowd, she proceeded to another vehicle. Her blood

dripped on several locations of the SUV, most notably on the doorhandle.

Flight is evidence of consciousness of guilt, and she fled the scene and discarded the knife somewhere. [Respondent] never went over to the victim to render aid or say that she was only trying to get her off. She never went over and said, "Oh, my gosh! I can't believe this happened. Are you okay? I didn't mean to go this far. I didn't want you to die. I didn't want you to fall." Never said that. Never approached that. Rather, she remorselessly said, "I cut my finger. I'm a sole survivor. I stabbed that fat bitch."

\* \* \*

No, [respondent], you were not in immediate danger of death or serious bodily injury. You never kicked [the victim] in the shins, screamed for help, or ever tried to cut her in her lower legs if your head was down, as you say. You escalated the fight by plunging that serrated blade into [the victim]'s heart with the intention to inflict serious bodily injury. I do not find that you acted in perfect self-defense or imperfect self-defense.

I, therefore, find, beyond a reasonable doubt, that you were involved in the second degree murder of [the victim] with the intent to inflict serious bodily harm, with a depraved heart, and by way of felony murder.

None of the circuit court's factual findings was clearly erroneous.

### Appellant's "Imperfect Self–Defense" Argument

Appellant argues that the circuit court's verdict must be vacated because (in the words of appellant's brief):

[T]he trial court improperly construed Maryland law concerning partial self-defense and misapplied it to the facts of this case when it concluded that [respondent] was not entitled to its shield of mitigation.

\* \* \*

A partial self-defense is essentially a mistake-of-fact defense where a person honestly, but mistakenly, believes him or herself to be in imminent danger of bodily harm and thus, unreasonably responds with deadly force. . . . However, in the mistaken view of the trial court, an imperfect self-defense under Maryland law is narrowly limited to those situations where the defendant has established *all* of the elements of a perfect self-defense *except* that his or her fear of imminent bodily harm is unreasonable.

\* \* \*

The trial court amplified its misunderstanding of the law when it further stated:

An aggressor is not entitled to the defense of self-defense. That is, if [respondent] initiated a deadly confrontation or *escalated an existing confrontation to that level, she would not benefit from the shield of self-defense.*

Through this syllogism of faulty legal reasoning the trial court erroneously excluded the *precise* variation of imperfect self-defense raised by the facts of this case, *to wit,* that [respondent], believing herself to be in danger of imminent bodily harm, *responded* in an unreasonable manner, *e.g.,* she used deadly force during a non-deadly force mutual combat. But the trial court could not possibly have fairly considered this very scenario because it believed that in the first instance, the shield of an imperfect self-defense was not available to [respondent] because she responded with an unreasonable level of force, *e.g.,* she used deadly force in the context of a non-deadly force mutual combat.

That was manifestly in error, for contrary to the trial court's view, the use of deadly force in an unreasonable manner does not preclude the defense of imperfect self-defense; indeed, that is the very hallmark of an imperfect self-defense, albeit in circumstances where the perpetrator of deadly force labors under an honest, but mistaken belief

that it is necessary to use such force. (Emphasis in original).

Under appellant's theory of the case, she could not be convicted of second degree murder if she was (1) entitled to use *some degree of* force to defend herself against an assault, and (2) used deadly force under an honestly held—but objectively unreasonable—belief that such action was necessary to prevent the victim from continuing the assault. We hold, however, that a murder defendant's subjective—but objectively unreasonable—belief that the use of deadly force was necessary constitutes "imperfect" self-defense *only* if the defendant had a subjective belief that he or she had to use such force *to avoid being killed or seriously injured.* This holding is consistent with the principle that "one must submit to a box on the ear and seek redress in the courts if he is unable to prevent it by means other than resort to deadly force." R. Perkins, *Criminal Law* (2d ed.1969) 886–87.

In *Faulkner v. State,* 54 Md.App. 113, 458 A.2d 81 (1983), while holding that the appellant was entitled to a jury instruction on the defense of "imperfect" self-defense, this Court stated:

Perfect self-defense requires not only that the killer subjectively believed that his actions were necessary for his safety but, objectively, that a reasonable man would so consider them. Imperfect self-defense, however, requires no more than a subjective honest belief on the part of the killer that his actions were necessary for his safety, even though, on an objective appraisal by a reasonable man, they would not be found to be so.

*Id.* at 115, 458 A.2d 81. According to appellant, because (1) "[i]mperfect self-defense ... requires no more than a subjective honest belief on the part of [appellant] that [her] actions were necessary for [her] safety," and (2) she used deadly force while "believing herself to be in danger of imminent bodily harm," the circuit court erred in rejecting her "imperfect self-defense" argument. In affirming this Court's Faulkner decision, however, the Court of Appeals made it clear that the

defense of "imperfect self-defense" is not available to the murder defendant who used deadly force to avoid "a box on the ear."

In *State v. Faulkner*, 301 Md. 482, 483 A.2d 759 (1984), the Court of Appeals stated:

> Logically, a defendant who commits a homicide while honestly, though unreasonably, **believing that he is threatened with death or serious bodily harm,** does not act with malice. . . . Therefore, as we see it, when evidence is presented showing the defendant's subjective **belief that the use of force was necessary to prevent imminent death or serious bodily harm,** the defendant is entitled to a proper instruction on imperfect self defense.
>
> A proper instruction when such evidence is present would enable the jury to reach one of several verdicts: (1) if the jury concluded the defendant did not have a subjective belief that the use of deadly force was necessary, its verdict would be murder; (2) if the jury concluded that the defendant had a reasonable subjective belief, its verdict would be not guilty; and (3) if the jury concluded that the defendant honestly believed that the use of force was necessary, but that this subjective belief was unreasonable under the circumstances, then its verdict would be guilty of voluntary manslaughter.

*Id.* at 500–01, 483 A.2d 759 (Emphasis added; footnote omitted).

The second edition of Professor David E. Aaronson's *Maryland Criminal Jury Instructions and Commentary* (Michie, 1988) includes the following proposed instruction:

> § 4, 23c. Manslaughter–Voluntary (suggested instruction on imperfect self-defense).
>
> I [have instructed] [will instruct] you on the law of self-defense. Now I will instruct you on a doctrine in the law known as imperfect self-defense, which is a form of manslaughter. A person who kills another person while honestly, though unreasonably, believing that he [she] is threat-

ened with death or serious bodily harm does not act with malice.

Complete or perfect self-defense requires not only that the defendant subjectively believed that he [she] was in apparent, imminent or immediate danger of death or serious bodily harm from his [her] assailant or potential assailant but that the circumstances under which the defendant acted must have been such as to produce in the mind of a reasonably prudent person, similarly situated, the reasonable belief that the other person was then about to kill him [her] or to do to him [her] serious bodily harm.

On the other hand, imperfect self-defense or manslaughter requires that the defendant have a subjective, honest belief that he was in apparent, imminent or immediate danger of death or serious bodily harm from his assailant or potential assailant. If a person honestly, but reasonably, believed that he was in danger of immediate death or serous bodily injury and the act of killing was a result of that belief, such person cannot be guilty of a crime greater than manslaughter. [Also, if the defendant used greater force than a reasonable person would have used, but the defendant actually believed that the force used was necessary, the defendant's subjective and honest, though unreasonable, belief that the force used was necessary would result in a verdict of manslaughter rather than murder.]

[However, for the doctrine of imperfect, self-defense to apply, it is also required that the defendant was not the initial aggressor using deadly force] [unless the defendant effectively withdrew from the encounter and the actual or potential assailant became the attacker.]

You are instructed that the burden is not on the defendant to prove either perfect or imperfect self-defense. As part of the State's burden to prove malice, the burden is on the State to prove beyond a reasonable doubt that the defendant did not act in self-defense and that there was no mitigation in the form of imperfect self-defense on the part of the defendant. If you have a reasonable doubt as to whether the defendant acted in complete self-defense (as I

will more fully instruct you), you must find the defendant not guilty. If you are convinced beyond a reasonable doubt that the defendant did *not* act in complete self-defense but you do have a reasonable doubt as to whether the defendant acted in imperfect self-defense, you must find the defendant guilty of manslaughter. On the other hand, if the State has proved beyond a reasonable doubt the elements of murder in the second degree, including the absence both of perfect or imperfect self-defense, you should find the defendant guilty of murder in the second degree.

In the COMMENT that follows the above instruction, Professor Aaronson noted that the defense of imperfect self-defense is available to "[a] defendant who commits a homicide honestly, though unreasonably, believing that he is threatened with **death or serious bodily harm[.]**" *Id.* at 346 (Emphasis added).

The MICPEL Criminal Pattern Jury Instructions also make it clear that the defense of imperfect self-defense is available only to the murder defendant who actually believed that he or she was in danger of death or serious bodily harm. MPJI–Cr 4.17.2, in pertinent part, states:

## C

## VOLUNTARY MANSLAUGHTER (IMPERFECT SELF–DEFENSE)

Voluntary manslaughter is an intentional killing, which would be murder, but is not murder because the defendant acted in partial self-defense. Partial self-defense does not result in a verdict of not guilty, but rather reduces the level of guilt from murder to manslaughter.

You have heard evidence that the defendant killed [victim] in self-defense. You must decide whether this is a complete defense, a partial defense, or no defense in this case.

In order to convict the defendant of murder, the State must prove that the defendant did not act in either complete

self-defense or partial self-defense. If the defendant did act in complete self-defense, the verdict must be not guilty. If the defendant did not act in complete self-defense, but did act in partial self-defense, the verdict should be guilty of voluntary manslaughter and not guilty of murder.

Self-defense is a complete defense, and you are required to find the defendant not guilty, if all of the following four factors are present:

(1) the defendant was not the aggressor [although the defendant was the initial aggressor, [he] [she] did not raise the fight to the deadly force level];

(2) the defendant actually believed that [he] [she] was in immediate and imminent danger of death or serious bodily harm;

(3) the defendant's belief was reasonable; and

(4) the defendant used no more force than was reasonably necessary to defend [himself] [herself] in light of the threatened or actual force.

In order to convict the defendant of murder, the State must prove that self-defense does not apply in this case. This means that you are required to find the defendant not guilty, unless the State has persuaded you, beyond a reasonable doubt, that at least one of the four factors of complete self-defense was absent.

Even if you find that the defendant did not act in complete self-defense, the defendant may still have acted in partial self-defense. **[If the defendant actually believed that [he] [she] was in immediate and imminent danger of death or serious bodily harm, even though a reasonable person would not have so believed, the defendant's actual, though unreasonable, belief is a partial self-defense and the verdict should be guilty of voluntary manslaughter rather than murder.]**

In order to convict the defendant of murder, the State must prove that the defendant did not act in complete self-defense or partial self-defense. If the defendant did act in complete self-defense, the verdict must be not guilty. If the

defendant did not act in complete self-defense, but did act in partial self-defense, the verdict should be guilty of voluntary manslaughter and not guilty of murder. (Emphasis added).

For the reasons stated by the Court of Appeals in *Faulkner, supra,* a murder defendant's subjective—but objectively un-reasonable—belief that the use of deadly force was necessary constitutes "imperfect" self-defense *only* if the defendant had a subjective belief that he or she had to use such force *to avoid being killed or seriously injured.* Serious physical injury is defined as "physical injury that: (1) creates a sub-stantial risk of death; or (2) causes permanent or protracted serious: (i) disfigurement; (ii) loss of the function of any bodily member or organ; or (iii) impairment of the function of any bodily member or organ." Md.Code Ann., Criminal Law § 3–201(d) (2007).

In the case at bar, the circuit court's oral opinion includes an express finding that appellant deliberately inflicted the fatal stab wound at a point in time when she did not have a subjective belief that she was in danger of death or serious injury. On the basis of that non-clearly erroneous factual finding, we affirm the ruling adjudicating appellant a delin-quent because she committed a second degree murder.

**JUDGMENTS AFFIRMED IN PART AND REVERSED IN PART; APPELLANT TO PAY 75% OF THE COSTS; 25% OF THE COSTS TO BE PAID BY MONTGOMERY COUNTY.**