967 A.2d 776

In re JULIANNA B.

No. 70, Sept. Term, 2008.

Court of Appeals of Maryland.

March 17, 2009.

658

Mary Ann Ince, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen.), on brief, for petitioner/Cross-Respondent.

Nancy S. Forster, Public Defender, for Respondent/Cross-Petitioner.

Argued before BELL, C.J., HARRELL, BATTAGLIA, GREENE, LAWRENCE F. RODOWSKY (retired, specially assigned), ALAN M. WILNER (retired, specially assigned) and RAYMOND G., THIEME, JR. (retired, specially assigned), JJ.

RODOWSKY, J.

The Circuit Court for Montgomery County, sitting as a juvenile court, denied an application by the Department of Juvenile Services (DJS) for modification of the treatment service plan for the respondent, Julianna B. Ms. B. appealed to the Court of Special Appeals, which vacated the order of denial and remanded to the juvenile court. *In re Julianna B.*, 179 Md.App. 512, 947 A.2d 90 (2008). The State petitioned this Court for the writ of certiorari, presenting the following questions:

"1. Should Julianna B.'s appeal be dismissed because the juvenile court's Continued Commitment and Transportation Order, denying Julianna B.'s motion for modification of her disposition, is not a final, appealable order?

"2. Did the juvenile court properly exercise its discretion in denying Julianna B.'s motion for modification of her disposition, where the juvenile court expressly recognized and applied the criteria, purposes and goals of the Juvenile Causes subtitle relating to disposition in delinquency cases?"

Julianna B. filed a conditional cross-petition in which she raised the question set forth below.

"1. Did the Court of Special Appeals err in holding that, when issuing its Order prohibiting the Department of Juvenile Services from implementing the Treatment Service Plan the juvenile court had adopted at the disposition hearing, which included passes for outings, home visits, and to pursue Ms. B.'s college education, the juvenile court did not violate the Separation of Powers Doctrine or the Juvenile Causes Act?"

We granted both petitions. *In re Julianna B.*, 405 Md. 505, 954 A.2d 467 (2008). Because, as we explain below, this case is moot, we shall vacate the judgment of the Court of Special Appeals and remand this case to that court with direction to dismiss Ms. B.'s appeal.

In September 2005, when Ms. B. was fifteen years old, she was involved in a one-on-one fight with another, but larger, fifteen year old female. Ms. B. stabbed her adversary in the heart. The juvenile court found her involved in second-degree murder. That adjudication was affirmed. *In re Julianna B.*, 177 Md.App. 547, 936 A.2d 906 (2007).

In January 2006, the court committed Ms. B. to the custody of DJS for placement at Waxter's Children's Center. Within three months, DJS reported to the court that Ms. B. was "a role model in the program" and requested that she be allowed passes for outside activities with staff or family that would gradually increase from two hours to forty-eight hours. The court denied that request, marking on DJS's memorandum, "Respondent has been adjudicated delinquent of second MURDER!" On May 16, 2006, DJS again applied to the court, advising that Ms. B. was "doing exceptionally well both behaviorally and academically." She was then at the highest level in the program and, based on her accelerating progress, DJS requested a home pass. The request was supported by a treatment progress report from Ms. B.'s psychologist. By marginal note, the court denied that application.

DJS requested, on July 6, 2006, a six-month review hearing. The court ruled that no action was to be taken at that time, so that no review hearing was held. By letter dated December 21, 2006, six members of the DJS staff, including the psychologist who had seen Ms. B. in nearly forty sessions of individual therapy, advised the court in a joint letter that Ms. B.'s behavior had been "exemplary," that she had earned her high school credits, and that she was currently studying to take the SAT.

DJS again, on March 28, 2007, submitted a case update to the court, with a request for a review hearing. In support, DJS furnished a thirteen-page psychological evaluation prepared by a psychologist other than the one who had been seeing Ms. B. regularly. That evaluation recommended that "gradual transition from placement to the community would be appropriate." On May 3, the court set the matter in for a review hearing on June 18, 2007.

A few days before the review hearing, DJS furnished the court with a transition plan that contemplated, *inter alia*, her attending Anne Arundel Community College. At the hearing, the Secretary of DJS testified in support of modifying the treatment service plan, as did Ms. B.'s regular psychologist, and her case management specialist. DJS's position was opposed, in person, by the victim's parents.

By an order that day, June 18, the court found Ms. B. to be "a danger to others" and that her "detention in a secure facility is necessitated." The court ordered that Ms. B. "shall continue to be committed to [DJS] for such medical, educational, and ordinary treatment as may be determined to be in the Respondent's best interest, subject to further Order of this Court[.]" Ms. B. noted an appeal from this order.

The State moved to dismiss the appeal, but the Court of Special Appeals concluded that it had jurisdiction. The appellate court reasoned that the juvenile court's denial of modification of the treatment service plan terminated the proceeding that was then before the court and, thus, constituted a final judgment under Maryland Code (1974, 2006 Repl.Vol.), § 12–

301 of the Courts and Judicial Proceedings Article (CJ). *In re Julianna B.*, 179 Md.App. at 549–59, 947 A.2d at 111–18. The intermediate appellate court further held that the juvenile court had authority to override DJS's judgment as to the terms and conditions of Ms. B.'s confinement, *id.* at 559–72, 947 A.2d at 118–25, but that, under the circumstances of this case, the juvenile court had abused its discretion by denying *any* supervised leave and by "continuing that commitment without adequately considering the legislative priorities of [CJ Title 3, Subtitle 8A, Juvenile Causes—Children Other Than CINAs and Adults], as well as the consensus of the experts with respect to Julianna's undenied progress and the appropriate course for her rehabilitation." 179 Md.App. at 588, 947 A.2d at 135.

In their briefs to this Court, the parties advised us of subsequent developments. Four days after the mandate issued from the Court of Special Appeals, vacating the judgment of the juvenile court and remanding this matter to that court for further proceedings consistent with the Court of Special Appeals' opinion, the juvenile court entered an order dated June 6, 2008, entitled, "Permanency Plan Review and Continued Commitment." That order granted Ms. B. home passes and found that the permanency plan should be reunification of Ms. B. with her mother.[1] The State has not fully briefed the question of mootness that arises from the new order of the juvenile court. In a footnote, the State suggests that the appealability issue is not rendered moot, and cites to

---

1. In its brief to us on behalf of Ms. B., the Office of the Public Defender, in a footnote, informs us:

"Since the June 6, 2008 Order granting home passes and ultimate reunification with her mother, Ms. B. has been released from Waxter and currently resides with her mother in Montgomery County. Ms. B. is gainfully employed as an aide in a retirement community and attends college on-line at the University of Maryland. Her juvenile case, with the approval of the court and the Department of Juvenile Services, has been transferred to Delaware where Ms. B. and her mother will ultimately reside so that Ms. B. can attend Wesley College in Dover, Delaware. Ms. B. chose this college because it has provided her with the greatest amount of scholarship money."

*Cottman v. State*, 395 Md. 729, 739 n. 7, 912 A.2d 620, 625 n. 7 (2006). That footnote reads in its entirety:

> "The term 'jurisdiction,' when applied to courts ' "is a term of large and comprehensive import and embraces every kind of judicial action." ' *Pulley v. State*, 287 Md. 406, 415, 412 A.2d 1244, 1249 (1980) (citations omitted)."

Presumably, the State is suggesting that we must first have appellate jurisdiction in order to decide whether a case is moot. The State next submits in the footnote that appealability is an issue of important public policy, on which we should comment in dicta. At oral argument, Ms. B. acknowledged that the present case is moot, but asked that we speak to the issues "for guidance."

# I

■ Because, as explained in Part II, the second issue raised by the State's certiorari petition and the issue raised in Ms. B.'s conditional cross-petition are moot, it is immaterial in this case whether the juvenile court's order of June 18, 2007, was appealable. If that order were not appealable, our mandate would be that the mandate of the Court of Special Appeals be vacated, and that this case be remanded to that court, with instructions to dismiss the appeal. If the June 18, 2007 order were appealable, our mandate would be the same, *i.e.*, a vacatur of the judgment of the Court of Special Appeals and a remand to that court with directions to dismiss the appeal on the grounds of mootness. The fact that the case became moot after the Court of Special Appeals' decision does not alter that result. *See Cottman v. State*, 395 Md. at 749–50, 912 A.2d at 631–32.

*Cottman* was an appeal from a judgment of conviction in a criminal case. Prior to the issuance by the Court of Special Appeals of its opinion, the circuit court granted the appellant a new trial. Subsequently, the Court of Special Appeals, not knowing that a new trial had been granted, filed an opinion affirming the conviction. Before the official mandate was issued, the defendant petitioned to dismiss the appeal as moot

and to have the opinion withdrawn. The Court of Special Appeals denied both requests and issued its official mandate. This Court granted the defendant's petition for certiorari and the State's conditional cross-petition. We held that the grant of the new trial mooted the appeal in both appellate courts. Indeed, the defendant's "appeal became moot the instant that the Circuit Court granted him a new trial." *Id.* at 743, 912 A.2d at 628.

As in the case before us, the Court of Special Appeals' opinion in *Cottman* had been published. On that aspect of the case, we said in *Cottman:*

˙ "Given the posture of the case before the Court of Special Appeals, that court could choose to maintain the expression of its views on the novel legal issue raised by leaving its reported opinion 'on the books'; however, it did not have authority to affirm or reverse the prior judgment of the Circuit Court."

*Id.* at 749, 912 A.2d at 631. Consequently, whether we dismiss the appeal for lack of an appealable order, or, after finding appealability, dismiss this case as moot, the mandate will be the same. Further, the reported opinion of the Court of Special Appeals will remain "on the books" for whatever persuasive value may be found in it, if a court in the future is presented with the combination of circumstances presented here.

## II

■ It is clear that the juvenile court's order of June 18, 2007, from which Ms. B.'s appeal was noted, is now moot. That order is no longer the operative order addressing her treatment service plan.

*State v. Peterson,* 315 Md. 73, 553 A.2d 672 (1989), is on point. Peterson had been placed on probation by a judge of the District Court of Maryland who was temporarily assigned to the Circuit Court for Baltimore City. When charged with violating that probation, Peterson was brought before an incumbent judge of the circuit court. Peterson objected,

contending that it was "practicable" under Maryland Rule 4–346(c) for the original sentencing judge to preside at the revocation proceeding. That argument failed, and Peterson appealed from the reinstatement of his original sentence, less credit for time served. The Court of Special Appeals reversed. *Peterson v. State,* 73 Md.App. 459, 534 A.2d 1353 (1988). The State petitioned for a writ of certiorari, which we granted. Despite the grant of that writ, "another revocation of probation hearing was held in the Circuit Court for Baltimore City" before a third judge, as to whom Peterson made no objection. 315 Md. at 79, 553 A.2d at 675. That judge placed Peterson on probation. This Court held that there was " 'no longer an existing controversy between the parties, so there is no longer any effective remedy which the court can provide.' " *Id.* at 80, 553 A.2d at 675–76 (quoting *Attorney General v. Anne Arundel County School Bus Contractors Ass'n,* 286 Md. 324, 327, 407 A.2d 749, 752 (1979)).

See also *Suter v. Stuckey,* 402 Md. 211, 219–20, 935 A.2d 731, 736 (2007) (challenged protective order expired); *Department of Human Resources v. Roth,* 398 Md. 137, 919 A.2d 1217 (2007) (challenged regulation amended); *J.L. Matthews, Inc. v. Maryland–Nat'l Capital Park & Planning Comm'n,* 368 Md. 71, 96–97, 792 A.2d 288, 303 (2002) (injunction expired by its terms); *Coburn v. Coburn,* 342 Md. 244, 674 A.2d 951 (1996) (expiration of protective order); *Robinson v. Lee,* 317 Md. 371, 564 A.2d 395 (1989) (state's action for declaratory judgment to determine duration of prisoner's custody mooted by release on habeas corpus).

## III

Although "[w]e have the constitutional authority . . . to express our views on the merits of a moot case," *Matthews,* 368 Md. at 96, 792 A.2d at 302–03, this is not an appropriate case in which to do so. Judge (later Chief Judge) Hammond, speaking for the Court in *Lloyd v. Board of Supervisors of Elections,* 206 Md. 36, 111 A.2d 379 (1954), expressed the rule that has been frequently cited thereafter in Maryland mootness cases. The *Lloyd* Court said that

"only where the urgency of establishing a rule of future conduct in matters of important public concern is imperative and manifest, will there be justified a departure from the general rule and practice of not deciding academic questions. [I]f the public interest clearly will be hurt if the question is not immediately decided, if the matter involved is likely to recur frequently, and its recurrence will involve a relationship between government and its citizens, or a duty of government, and upon any recurrence, the same difficulty which prevented the appeal at hand from being heard in time is likely again to prevent a decision, then the Court may find justification for deciding the issues raised by a question which has become moot, particularly if all these factors concur with sufficient weight."

*Id.* at 43, 111 A.2d at 382. *See, e.g., Suter,* 402 Md. at 220, 935 A.2d at 736; *Roth,* 398 Md. at 143–44, 919 A.2d at 1221; *Matthews,* 368 Md. at 96–97, 792 A.2d at 303; *Reyes v. Prince George's County,* 281 Md. 279, 300 n. 18, 380 A.2d 12, 24 n. 18 (1977).

The case before us does not rise to that standard. Indeed, this case presents somewhat unique circumstances. The Court of Special Appeals referred to one of the unique aspects, when it said:

"In effect, 'the State' took both sides in the proceedings below. DJS, represented by an Assistant Attorney General, joined appellant in her request for modification of her commitment. The prosecutorial arm of the State opposed modification, however, and was represented by an Assistant State's Attorney."

*In re Julianna B.,* 179 Md.App. at 517 n. 1, 947 A.2d at 93 n. 1. Nor do we foresee that the confluence of circumstances that produced this case will arise frequently in the future. From the standpoint of the juvenile court judge, this case arose out of one of the most serious crimes known to the law. From the DJS standpoint, Ms. B. seems to be a most remarkable individual whose rehabilitation motivated DJS to efforts rare-

ly, if ever, seen in seeking to obtain some modification of her treatment service plan.

The State, however, fears that the recognition by the Court of Special Appeals of a right to appeal, when modification is denied, will open the floodgates to such appeals. As we pointed out in Part I, *supra*, the opinion of the Court of Special Appeals is dicta. More important, we do not anticipate that juvenile court judges, when faced with a record of rehabilitation and a recommendation from DJS, as strong as those presented here, will refuse to make any modification in a treatment service plan that placed the juvenile in the physical custody of DJS. Further, we do not anticipate that the Office of the Public Defender will spend its limited resources in attempting to pursue appeals in cases in which modification has been denied, where DJS does not support the requested modification. In sum, the instant case lacks the urgency and the frequency of repetition that is ordinarily required in order to be excepted from the rule that we do not decide moot cases.

Nor can this Court segregate the issue of appealability from the issues in this case that go to the merits. The State urges that we express the view that no appeal lies from the denial of a requested modification. That position assumes that our opinion would be that such orders are not appealable. But, were we to conclude that an appeal lies from the order entered in this case, we would then be obliged to adjudicate the merits, which would include adjudicating the separation of powers argument advanced by Ms. B.

"[T]his Court has regularly adhered to the principle that we will not reach a constitutional issue when a case can properly be disposed of on a non-constitutional ground." *State v. Lancaster*, 332 Md. 385, 403 n. 13, 631 A.2d 453, 463 n. 13 (1993). In *Insurance Commissioner v. Equitable Life Ins. Soc'y of United States*, 339 Md. 596, 664 A.2d 862 (1995), certain petitioners contended that the respondent insurer violated the Equal Rights Amendment by using gender based rates for its disability income policies. The Insurance Commissioner found that this issue was moot because the insurer

had discontinued issuing new disability income policies. This Court refused to opine on the moot issue, saying:

> "[A]pplication of the general rule against resolving moot issues is particularly appropriate where, as in this case, the moot issues involve constitutional questions. This 'Court's established policy is to decide constitutional issues only when necessary.'"

*Id.* at 614, 664 A.2d at 871 (quoting *Mercy Hospital v. Jackson,* 306 Md. 556, 565, 510 A.2d 562, 566 (1986)).

In *Jackson,* this Court declined to address whether a hospital, without the consent of a pregnant patient who was a Jehovah's Witness, lawfully could administer a blood transfusion to her. The case became moot when the patient and the baby survived a Caesarian section, without a blood transfusion. *See also Stevenson v. Lanham,* 127 Md.App. 597, 736 A.2d 363 (1999) (declining to opine whether prisoner on hunger strike could be force fed where case was mooted by prisoner's resumption of taking sustenance).

For all of the foregoing reasons, we enter the following mandate.

**JUDGMENT OF THE COURT OF SPECIAL APPEALS VACATED, AND CASE REMANDED TO THAT COURT WITH INSTRUCTIONS TO DISMISS THE APPEAL, AS MOOT.**

**COSTS TO BE DIVIDED EQUALLY BETWEEN THE PARTIES.**