968 A.2d 1067

**In re DEONTAY J.**

**No. 58 Sept.Term, 2008.**

Court of Appeals of Maryland.

Dec. 10, 2008—Order.

April 7, 2009—Opinion.

Julia Doyle Bernhardt, Asst. Atty. Gen. (Douglas F. Gansler, Atty. Gen. of Maryland, on brief), Baltimore, for Petitioner.

Katherine P. Rasin, Asst. Public Defender (Nancy S. Forster, Public Defender, on brief), Baltimore, for Respondent.

Argued Before BELL, C.J., HARRELL, BATTAGLIA, GREENE, MURPHY, ADKINS and BARBERA, JJ.

**154**

MURPHY, J.

On December 10, 2008, this Court

ORDERED that the judgment of the Court of Special Appeals in No. 1733, September Term, 2007 be and is hereby AFFIRMED in part, and VACATED in part; and ... further

ORDERED that the case be and is hereby REMANDED to the Court of Special Appeals with directions to remand to the Circuit Court for Baltimore City for further proceedings; and ... further

ORDERED that pending the further proceedings required by this Order, the custody provision of the Circuit Court's September 7, 2007 Order shall have the force and effect of a *pendente lite* Order; and ... further

ORDERED that upon remand, the Circuit Court shall hold a custody hearing at which the Circuit Court shall (1) expressly state the findings it is required to make under § 9–101(b) of the Family Law Article, and (2) enter a custody order that conforms to the applicable law and is based upon a current and complete factual predicate; and ... further

\* \* \*

ORDERED that [R]espondent's Motions to Supplement the Record be and are DENIED.

This opinion states the reasons why we entered that Order.

### Background

Deontay J. (Deontay) was born on March 8, 2006. In the Circuit Court for Baltimore City, on August 21, 2006, the Baltimore City Department of Social Services (Petitioner) filed a PETITION WITH REQUEST FOR SHELTER CARE of Deontay that included the following assertions:

1. [Deontay's] mother abuses alcohol, prescription drugs and illicit drugs, conditions which render her incapable of providing consistently adequate care, protection and supervision of the respondent.

2. On or about August 18, 2006, [Deontay's] mother was observed walking in the flow of traffic with the respondent in his stroller. [Deontay's] mother was in a zombie like state. [Deontay's] mother was observed to be under the influence of an intoxicant.

3. The BCPD was called and an Officer responded to the location of the mother and [Deontay]. [Deontay's] mother was observed to be carrying an open bottle container and a prescription pill container. The Officer attempted to question the mother, but she was incoherent. [Deontay's] mother was observed nodding and to the point of unconsciousness.

4. The BCPD Officer contacted the necessary emergency response personnel. [Deontay] was transported to the JHH where he was examined by the attending physician. [Deontay] was found to have a severe diaper rash on his buttocks and groin area, hypuspadias, (deformity of the penis), and Seborrheic, (infant cradlecap). [Deontay] will need surgery to correct the Seborrheic. [Deontay] was unkempt, dirty, and spoiled milk was in his bottle.

5. The BCDSS was contacted and [Deontay] was placed in their care.

\* \* \*

8. [Deontay] has five siblings, [Sophia] B. (ID# 199526), Donnick D. (ID# 182876), Davon J. (ID# 192670), Denzel J. (ID# 192672), and Shyra J. (ID# 192671). All of whom have been found CINA. The BCDSS has been granted guardianship in regard to the siblings, Sophia and Donnick. Davon[,] Denzel and Shyra have been committed to the BCDSS with limited guardianship granted to Linda C. The next scheduled hearing date for Shyra, Denzel and Davon will be a Review hearing on October 3, 2006, at 1:00 p.m. in Part–1/H–5.

9. [Deontay's] father, Jeffrey J., has failed to take necessary steps to protect his child from the neglectful situation.

Later that day, the Circuit Court placed Deontay in Petitioner's custody. At the conclusion of a September 13, 2006

adjudicatory hearing, the Circuit Court entered an Order Controlling Conduct that placed Deontay in the custody of his father, Jeffrey J. (Respondent). On October 6, 2006, Petitioner filed an AMENDMENT TO PETITION AND REQUEST FOR SHELTER CARE that included the following assertions:

2. On September 13, 2006, the Court ordered the parties ([Deontay's] parents) to comply with an Order Controlling Conduct. The mother was to have no contact with [Deontay]. The father was [to] ensure health care, day care, and comply with BCDSS.

3. On or about October 4, 2006, the BCD SS was informed that [Deontay] and his father moved into the same home with the mother.

4. [Deontay] was removed and placed in shelter care pending further Court intervention.

Between October 6, 2006 and April 20, 2007, Deontay was the subject of several hearings and a settlement conference. At the conclusion of an April 20, 2007 Contested Disposition Master's hearing, the Master recommended that Deontay be placed in Petitioner's custody. The Master's on-the-record explanation for this recommendation included the following comments:

But I have serious concerns about [the father's] judgment, his understanding of what parenting is. Buying—having a home and having all the things to care for the baby without understanding how to actually care for the baby.

What disturbs me most is that he'd been with his wife for a long period of time and he still does not really either accept or understand the significance of the substance abuse. Didn't recognize that it existed. And once he fully acknowledged it, he still does not even want to accept or understand or comprehend the seriousness of it and how it impacts the children.

I also don't think he understands how to care for the [respondent]. In certain things, he does. He knows that he can't give [respondent] a piece of steak ... But in terms of

medical treatment and in terms of his ability to negotiate those systems, it is—and even to know when something urgent needs to happen, I think his judgment is impaired. I think there are some limitations for him in that area.

The fact that he would take the child out every day from Harford County to Baltimore City just because he was bored with what was happening in Harford County, it's almost like he doesn't know what to do with the baby. And all day long, just sort of walking around out in the environment without—

\* \* \*

I think that he has cognitive limitations. I think that the parenting skills, although he went to class, maybe the class was not appropriate for him in terms of infant care. But I think that there are lapses in his judgment and critical thinking skills in terms of raising a baby.

I just don't think that he's able to do that at this time based on the testimony that I heard and the Court medical report. It's the cognitive limitation, the poor insight, and the lack of judgment and decision making. I don't think that he's able to do that. I do think he needs to have a special parenting class, because he is not going to grasp the concepts that are being presented in the typical parenting role. And I don't think it's safe for [the child] to return to his care.

He has medical issues that are serious ones. And if they're not treated appropriately, they can develop into something much more serious. So this Court finds that the father is willing but unable. So the Court finds [the child] a child in need of assistance and I'm going to commit him to the Department.

The record shows that the Master's recommendations were filed on April 20, 2007, and that the Circuit Court entered the recommended Order on the following day. The record also shows that, although Respondent did not move to vacate the Order entered on April 21, 2007, he did file a Notice of Exceptions on April 25, 2007, and that Respondent's excep-

tions were denied at the conclusion of a September 7, 2007 hearing.

On September 20, 2007, Respondent noted an appeal to the Court of Special Appeals. In an unreported opinion filed on May 15, 2008, the Court of Special Appeals affirmed the finding that Deontay is a CINA, but held that "[n]either the facts presented nor the concerns expressed by the trial court are sufficient to remove Deontay from his father's custody." *In re Deontay J.*, No. 1733, September Term, 2007, 180 Md.App. 766 (slip opinion, p. 13). Thereafter, Petitioner requested that this Court issue a writ of certiorari to address three questions:

1. Is appellate jurisdiction lacking in this case, where the juvenile court adopted the master's recommendation by order dated April 21, 2007, before Mr. J. filed his notice of exceptions, and Mr. J. neither moved to vacate that order nor noted [ ] his appeal within thirty days of that order?

2. May a juvenile court find a child in need of assistance and commit him to the custody of a local department based on the parents' neglect of five siblings, which resulted in CINA findings as to all of the children, and termination of parental rights as to two of them?

3. Did the juvenile court properly find a child to be a child in need of assistance and commit him to the custody of the local department on finding that the father had placed the child in a life-threatening situation and that the father's cognitive limitations, lack of judgment, and lack of parenting and life skills rendered him unable to provide proper care and attention to the child and his needs?

On July 29, 2008, this Court granted that petition. 405 Md. 350, 952 A.2d 225 (2008).

### Discussion

#### I.

■ Maryland Rule 11–111, in pertinent part, provides:

c. Review by Court if Exceptions Filed. Any party may file exceptions to the master's proposed findings, conclu-

sions, recommendations or proposed orders. Exceptions shall be in writing, filed with the clerk within five days after the master's report is served upon the party, and shall specify those items to which the party excepts, and whether the hearing is to be de novo or on the record.

Upon the filing of exceptions, a prompt hearing shall be scheduled on the exceptions. An excepting party other than the State may elect a hearing de novo or a hearing on the record. If the State is the excepting party, the hearing shall be on the record, supplemented by such additional evidence as the judge considers relevant and to which the parties raise no objection. In either case the hearing shall be limited to those matters to which exceptions have been taken.

d. Review by Court in Absence of Exceptions. In the absence of timely and proper exceptions, the master's proposed findings of fact, conclusions of law and recommendations may be adopted by the court and the proposed or other appropriate orders may be entered based on them. The court may remand the case to the master for further hearing, or may, on its own motion, schedule and conduct a further hearing supplemented by such additional evidence as the court considers relevant and to which the parties raise no objection. Action by the court under this section shall be taken within two days after the expiration of the time for filing exceptions.

In the words of Petitioner's brief,

Under the rationale of *In re: Kaela C.*, [394 Md. 432, 906 A.2d 915 (2006)] and *In re: Kevin E.*, [402 Md. 624, 938 A.2d 826 (2008)], the April 21 order, although entered in error, became the final order of the juvenile court, thereby nullifying Mr. J's exceptions. Mr. J. neither moved to vacate the April 21 order nor noted his appeal within thirty days of that order, but instead filed exceptions to the master's recommendation of April 20, 2007. After the juvenile court overruled his exceptions, he filed his notice of appeal on September 20, 2007. This was within thirty days of the order that overruled his exceptions, but five months

after the court had signed an order adopting the master's recommendations. Under the rationale of *Kevin E.* and *Kaela C.*, Mr. J.'s exceptions were a nullity and the April 21, 2007 order was the dispositive CINA order.

(Footnote omitted). We are persuaded, however, that the September 20, 2007 notice of appeal was timely.

We hold that it is of no consequence whatsoever that Respondent's April 25, 2007 filing was captioned "Notice of Exceptions" rather than "Motion to Vacate Order." To hold that the Court of Special Appeals did not have jurisdiction to decide Respondent's appeal would be inconsistent with the well established principle "that the substance rather than the form of the pleading is the controlling consideration." *Lapp v. Stanton*, 116 Md. 197, 199, 81 A. 675, 677 (1911). In *Murrell v. Mayor and City Council of Baltimore*, 376 Md. 170, 829 A.2d 548 (2003), this Court held that an action initiated in the Circuit Court for Baltimore City by the filing of a "Petition for Judicial Review" should not have been dismissed by the Court of Special Appeals because "the substance of the circuit court action was a common law mandamus action[, and therefore] was appealable to the Court of Special Appeals under § 12–301 of the Courts and Judicial Proceedings Article." *Id.* at 196–97, 829 A.2d at 564. The record shows that Respondent's Notice of Exceptions was supplemented by a nine page Memorandum, the last sentence of which concluded with the argument that "the decision finding [Deontay] to be a CINA and committing him to the Department of Social Services should be reversed." The record also shows that the Circuit Court treated the Notice of Exceptions as the functional equivalent of a motion to vacate. Under these circumstances, Respondent had the right to appellate review of the April 21, 2007 Order.

## II. & III.

Section 9–101 of the Family Law Article, in pertinent part, provides:

(a) *Determination by court.*—In any custody or visitation proceeding, if the court has reasonable grounds to believe that a child has been abused or neglected by a party to the proceeding, the court shall determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to the party.

(b) *Specific finding required.*—Unless the court specifically finds that there is no likelihood of further child abuse or neglect by the party, the court shall deny custody or visitation rights to that party, except that the court may approve a supervised visitation arrangement that assures the safety and the physiological, psychological, and emotional well-being of the child.

In *In re Adoption No. 12612*, 353 Md. 209, 725 A.2d 1037 (1999), which involved a custody dispute between the child's birth mother and the child's "principal caregiver," this Court stated:

We find no patent ambiguity in the wording of § 9–101 . . . . The statute dictates that, if the court, in a custody or visitation proceeding, has reasonable grounds to believe that a child—any child—has been abused or neglected by a party to the proceeding, the court must determine whether abuse or neglect is likely to occur if custody or visitation rights are granted to that party—the party responsible for the abuse or neglect. Unless the court specifically finds that there is no likelihood of further abuse or neglect by that party, it must deny custody or visitation rights to that party except for a supervised visitation arrangement that assures the safety and the physiological, psychological, and emotional well-being of the child. . . . The focus is not on a particular child but on the party guilty of the previous abuse or neglect.

*Id.* at 234, 725 A.2d at 1049–50.

In the case at bar, because Respondent had neglected Deontay's siblings, the Circuit Court could not have awarded custody of Deontay to Respondent without first making the specific finding that there is no likelihood that Respondent

would neglect Deontay. For that reason, the proper disposition of the case at bar is a remand to the Circuit Court for a hearing at the conclusion of which the Circuit Court shall make the specific findings required by the statute. At the conclusion of that hearing, an aggrieved party will have a right to appellate review of whatever appealable order is entered by the Circuit Court.

### Jurisdiction of the Circuit Court to Modify a Custody Order While an Appeal from that Order is Pending in this Court or in the Court of Special Appeals

The case at bar presents the question of whether the appeal noted by Respondent on September 20, 2007 prohibited the Circuit Court from changing custody of Deontay until the appellate proceedings had concluded. Prior to argument in this Court, Respondent filed a MOTION TO DISMISS and a MOTION TO SUPPLEMENT THE RECORD, in which he argued that, because of a September 5, 2008 Order entered by the Circuit Court, (in the words of Respondent's Motion) "the sole issue that is properly before this Court, whether Deontay should be returned to [R]espondent's custody, [is now] moot." In response to those motions, Petitioner (1) conceded that, prior to a September 5, 2008 Review hearing, Petitioner agreed to return Deontay to [R]espondent's custody by November 18, 2008, but (2) asserted that it could not return Deontay to Respondent's custody until the Circuit Court made findings required by FL § 9–101. During oral argument, we were advised that the Circuit Court decided to take no further action until it received instructions from this Court.

In *In re Emileigh F.*, 355 Md. 198, 733 A.2d 1103 (1999), nearly four months after this Court granted the petition for *writ of certiorari* filed by the mother of a child found to be a CINA, the juvenile court (1) granted a Motion for Order of Rescission and Termination of juvenile court jurisdiction, (2) found that, because the child was no longer a CINA, supervision by the Department of Health and Human Services should be rescinded, (3) entered an order that the child be continued in the custody and guardianship of her father, and (4) "closed"

the CINA case. *Id.* at 201, 733 A.2d at 1104. While holding that the juvenile court erred in terminating its jurisdiction under these circumstances, this Court stated:

> After an appeal is filed, a trial court may not act to frustrate the actions of an appellate court. Post-appeal orders which affect the subject matter of the appeal are prohibited.
>
> \* \* \*
>
> In the instant case, the action taken by the juvenile court addressed matters that were clearly involved in the pending appeal. The court's action in closing the CINA case and thereby terminating that court's jurisdiction, if permitted, would in essence defeat the right of [appellant] to prosecute her appeal with effect. We hold that the juvenile court's actions were inconsistent with the pending appeal and were prohibited. Accordingly, the juvenile court shall vacate the judgment closing the CINA proceedings, conduct a review hearing, and determine anew as of the time of the hearing the placement for the care and custody of [the child].

*Id.* at 202–04, 733 A.2d at 1105.

Prohibited action by the trial court that defeats the right of a party to prosecute an appeal is distinguishable from permitted action by the trial court that renders a case moot. In *In re Julianna B.*, 407 Md. 657, 967 A.2d 776 (2009), while issues arising out of the respondent's "treatment service plan" were pending in this Court, the juvenile court held a review hearing and entered an order that modified the order from which the respondent's appeal was noted. While remanding the case to the Court of Special Appeals with instructions to dismiss the appeal as moot, this Court stated, "[i]t is clear that the juvenile court's order ... from which Ms. B's appeal was noted, is now moot. That order is no longer the operative order addressing her treatment service plan." *Id.* at 664, 967 A.2d at 780, 2009 WL 678786 at \*4.

In *Frase v. Barnhart*, 379 Md. 100, 840 A.2d 114 (2003), this Court stated:

> It is common—and in some instances required—for juvenile courts, in dealing with children who have been found in need

of assistance (CINA), to have periodic review hearings to monitor the progress of the child, the child's parents, and any other guardian or potential custodian. In that setting, of course, the child has already come under the direct jurisdiction and supervision of the court and may well be in the legal custody of the court. By statute, the court's comprehensive jurisdiction extends until either the child turns 21 or the jurisdiction is affirmatively terminated by the court. *See* CJP § 3–804(b). The context, which justifies the direct and continuing supervision of the court, is that, as part of the CINA finding, the court has determined that court intervention is required to protect the child's health, safety, and well-being. *See* CJP § 3–801(f) and (m).

The court's role is different in a normal private custody dispute. It is to take evidence and decide the dispute, so that the child and the other parties can get on with their lives.... Although the matter of custody, visitation, and support may always be reopened upon a showing of changed circumstances, the court's jurisdiction over the particular dispute ends when the dispute is resolved, which the law anticipates will occur within a reasonable time after the evidentiary hearing. Those kinds of cases are not to be strung out indefinitely, as though they were CINA cases.

*Id.* at 120–21, 840 A.2d at 126.

■ The Circuit Court has a duty to modify a custody order when persuaded that a modification is necessary to protect the health, safety and well-being of a CINA. This duty is not affected by the pendency of an appeal, or by the fact that the next periodic review hearing is not scheduled to be held for several months. In *Koffley v. Koffley,* 160 Md.App. 633, 866 A.2d 161 (2005), *cert. denied* 386 Md. 181, 872 A.2d 47 (2005), the Court of Special Appeals denied the appellant's "Emergency Motion to Immediately Vacate Custody and Visitation Orders ..." that had been entered by the Circuit Court subsequent to the dates on which the parties had noted their appeals. The *Koffley* Court stated:

This motion included the assertion that, because the present custody and visitation orders are "on appeal," the circuit court has been divested of jurisdiction to change any of the provisions in those orders. According to the appellant, unless and until this Court reverses or vacates the orders at issue, the circuit court does not have jurisdiction to order a change in custody.

\* \* \*

Any custody decision is an exception to the general rule that only a final judgment may be appealed. That is, a decree as to the custody of a child is never absolutely final because it is always subject to modification and change under the continuing jurisdiction of the divorce court. However, it is final in the sense that it is not interlocutory, and is conclusive, of the facts in evidence at the time it was rendered.

\* \* \*

Courts differ on the question of whether an appeal deprives the trial judge of jurisdiction to consider a motion dealing with the child's custody. Some courts hold the trial court lacks jurisdiction to deal with a motion subsequent to the notice of appeal.... Other cases hold that (even if a supersedeas bond is given) the trial court does not lose jurisdiction to make a temporary custody order pending appeal upon pleading and proof that the children's welfare was substantially endangered during that period.... The appeal does not transfer to the distant appellate court the continuing jurisdiction over the child's welfare.

Sandra Morgan Little, Child Custody and Visitation, Law and Practice, Custody § 26.03[1], Appeals § 26.04[1] (2004).

We are persuaded that the appeal of a custody order does not divest the circuit court of jurisdiction to decide the merits of a claim that, as a result of a *material* change in circumstances that has occurred *after* that order was entered, a change in custody is in the child's best interest. We therefore hold that the appellant's "Emergency Motion

to Immediately Vacate Custody and Visitation Orders and to Transfer Custody of Patrick to Appellant" should have been presented to the circuit court in the first instance. This holding is entirely consistent with ... *Frase, supra,* as well as with several opinions of this Court, including *Wagner v. Wagner,* 109 Md.App. 1, 674 A.2d 1 (1996), *Shunk v. Walker,* 87 Md.App. 389, 589 A.2d 1303 (1991), *Link v. Link,* 35 Md.App. 684, 371 A.2d 1146 (1977), and *Garland v. Garland,* 22 Md.App. 80, 321 A.2d 808 (1974).

In *Wagner, supra,* while summarizing "the procedural steps required to be taken in child custody modification cases," this Court expressly stated that "[the] threshold—but not paramount—issue is the existence of a material change," and "the circumstances to which change would apply would be the circumstances known to the trial court when it rendered the prior order ... [or] not known to the court because evidence relating thereto was not available to the court." 109 Md.App. at 28–31, 674 A.2d 1. It is clear from the procedure summarized in *Wagner* that, although the party moving for modification must prove that there has been a material change in circumstances, that party is not prohibited from litigating the issue on the ground that the prior order has been appealed.

In *Shunk, supra,* this Court affirmed a "modification of a custody award that transfer[red] custody of the child from the 'custodial' parent to the 'visitor' parent." 87 Md.App. at 397, 589 A.2d 1303. In that case, the initial award of custody was included in a judgment of divorce entered on October 27, 1988, and the petition to modify custody was filed on April 6, 1990. *Id.* at 393–94, 589 A.2d 1303. This Court noted that, although appellant argued that "there was no justification for the chancellor's ruling,"

Appellant does not contest the jurisdiction of the court in modifying its previous custody order. The court retained jurisdiction by virtue of Md.Code (1984), Fam. Law Art. § 9–204(a)(1)(ii).

*Id.* at 395 n. 2, 87 Md.App. 389, 589 A.2d 1303.

\* \* \*

For the above stated reasons, there is no reason why the appeal of a custody order divests the circuit court of jurisdiction to decide the merits of a claim that a change of custody is in the best interest of the child whose custody order is at issue in the pending appeal, *provided that* the motion for change of custody pending appeal is based upon the assertion of a material change in circumstances that has occurred subsequent to the entry of that order.

*Id.* at 636, 641–45, 866 A.2d at 163, 166–68.

For the reasons stated above, we conclude that the appeal of the custody order entered on April 21, 2007 did not divest the Circuit Court of jurisdiction to decide the merits of a claim that, as a result of a *material* change in circumstances that has occurred *after* that order was entered, a change in custody is in Deontay's best interest. As a result of that conclusion, our December 10, 2008 Order included the provision denying Respondent's Motions to Supplement the Record.

**IT IS SO ORDERED; EACH PARTY TO PAY 50% OF THE COSTS.**

BELL, C.J., joins in judgment only.